330 So.2d 484 (1976)
SEAGATE CONDOMINIUM ASSOCIATION, INC., a Nonprofit Florida Corporation, Appellant,
v.
William B. DUFFY and Richard G. Duffy, As Executors of the Estate of Alice M. Duffy, Deceased, Appellees.
No. 75-77.
District Court of Appeal of Florida, Fourth District.
April 15, 1976.
Frederick L.R. Hill, Boynton Beach, and Guy C. Hill, West Palm Beach, for appellant.
Manley P. Caldwell, Jr., of Caldwell, Pacetti, Barrow & Salisbury, Palm Beach, for appellees.
OWEN, Judge.
Appellant-condominium association appeals from a final judgment declaring certain restrictions upon the leasing of condominium units, contained in its Declaration of Condominium, invalid as an unlawful restraint on alienation and awarding appellee-unit owners damages for rents lost as a result of the enforcement of these restrictions.
The restrictive provision in question was added to the appellant's Declaration of Condominium, pursuant to the amendment procedures prescribed therein, upon an affirmative vote of over ninety-six percent of the unit owners. It provided as follows:
"As previously stated, it is the intent that the owner of each unit of Seagate Towers Condominium shall occupy and *485 use such unit as a private dwelling for himself and his immediate family, and for no other purpose including business purposes. Therefore, the leasing of units to others as a regular practice for business, speculative, investment or other similar purposes is not permitted.
To meet special situations and to avoid undue hardship or practical difficulties the Board of Directors may grant permission to an owner to lease his unit to a specified lessee for a period of not less than four consecutive months nor more than twelve consecutive months."
Appellee-unit owners inherited their unit from their mother, the original purchaser. They received notice of the condominium association meeting at which the amendment was to be considered, but did not attend this meeting and did not return a proxy ballot mailed to them. In fact, they did not voice any objection to the amendment until well after its passage, when it first became apparent that the restriction would interfere with their plans to lease their unit. At that point, they initiated the instant suit. The trial court determined that the amendment was both an unreasonable restriction and an unlawful restraint on alienation and awarded damages to appellees for lost rents.
The ancient rule against restraints on alienation is founded entirely upon considerations of public policy, specifically, the idea that the free alienability of property fosters economic and commercial development. 2 Archbold's Blackstone, Ch. XIX (1825); Simes & Smith, The Law of Future Interests, § 1135 (2nd ed., 1956); Manning, "The Development of Restraints on Alienation Since Gray," 48 Harv.L.Rev. 373, 403 (1935); IV Restatement, Property, 2129-33, 2379-80 (1944); 61 Am.Jur.2d, Perpetuities and Restraints on Alienation, § 93 (1972). Competing policy considerations, however, have, almost from the inception of the rule, caused exceptions to be carved out of it. Our courts have traditionally undertaken to determine the validity of restraints by measuring them in terms of their duration, type of alienation precluded, or the size of the class precluded from taking.[1] 4A Thompson, Real Property, § 2016 (1961); 61 Am.Jur.2d, Perpetuities and Restraints on Alienation, §§ 102-104(1972). The rule has long been recognized as precluding only unlimited or absolute restraints on alienation. Robinson *486 v. Randolph, 21 Fla. 629, 58 Am.Rep. 692 (1885); Davis v. Geyer, 151 Fla. 362, 9 So.2d 727 (1942).
The test which our courts have adopted and applied with respect to restraints on alienation and use[2] is reasonableness. E.g., Points v. Barnes, 301 So.2d 102 (4th DCA Fla. 1974); Robinson v. Speer, 185 So.2d 730 (1st DCA Fla. 1966); Blair v. Kingsley, 128 So.2d 889 (2nd DCA Fla. 1961). The question for us here, therefore, is whether appellant's leasing restriction is reasonable given the context in which it was promulgated, i.e., the condominium living arrangement.
Our courts have on several occasions pointed out the uniqueness of the problems of condominium living and the resultant necessity for a greater degree of control over and limitation upon the rights of the individual owner than might be tolerated given more traditional forms of property ownership. Hidden Harbour Estates, Inc. v. Norman, 309 So.2d 180 (4th DCA Fla. 1975); Holiday Out in America at St. Lucie, Inc. v. Bowes, 285 So.2d 63 (4th DCA Fla. 1973); Sterling Village Condominium, Inc. v. Breitenbach, 251 So.2d 685 (4th DCA Fla. 1971); Chianese v. Culley, 397 F. Supp. 1344 (S.D.Fla. 1975). As this court said, in Hidden Harbour Estates, Inc. v. Norman, at 181-2:
"... inherent in the condominium concept is the principle that to promote the health, happiness, and peace of mind of the majority of the unit owners since they are living in such close proximity and using facilities in common, each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property. Condominium unit owners comprise a little democratic sub society of necessity more restrictive as it pertains to use of condominium property than may be existent outside the condominium organization."
Our Legislature also has expressly recognized the necessity for restrictions upon the use, occupancy and transfer of condominium units. Fla. Stat. § 711.08(2) (1973).
It is our opinion that appellant's leasing restriction constitutes neither an unlimited nor unreasonable restraint on alienation. The restriction is not unlimited in several respects: it prohibits only a specific form of alienation, i.e., leasing; under general but not unlimited circumstances, i.e., the condominium association will consider its suspension in hardship[3] for a not unlimited period of time, i.e., because it can be terminated at any time by a vote of the condominium unit owners pursuant to the amendment provisions of their Declaration of Condominium. The restriction, moreover, is reasonable. Given the unique problems of condominium living in general and the special problems endemic to a tourist oriented community in South Florida in particular, appellant's avowed objective  to inhibit transciency and to impart a certain degree of continuity of residence and a residential character to their community  is, we believe, a reasonable *487 one, achieved in a not unreasonable manner by means of the restrictive provision in question. The attainment of this community goal outweighs the social value of retaining for the individual unit owner the absolutely unqualified right to dispose of his property in any way and for such duration or purpose as he alone so desires.
The judgment is therefore reversed and the cause remanded for further proceedings consistent herewith.
REVERSED and REMANDED.
WALDEN, C.J., and DOWNEY, J., concur.
NOTES
[1] This approach has been criticized by more modern authorities which have taken the position that the validity of restraints should be weighed more simply in terms of the competing social policies involved. See, e.g., Gale v. York Center Community Cooperative, Inc., 21 Ill.2d 86, 171 N.E.2d 30, at 33 (1960):

"From the authorities here mentioned and many others examined, it would appear that the crucial inquiry should be directed at the utility of the restraint as compared with the injurious consequences that will flow from its enforcement. If accepted social and economic considerations dictate that a partial restraint is reasonably necessary for their fulfillment, such a restraint should be sustained. No retraint should be sustained simply because it is limited in time, or the class of persons excluded is not total, or all modes of alienation are not prohibited. These qualifications lessen the degree to which restraints violate general public policy against restraining alienation of property and should be considered to that extent; but they are not, in themselves, sufficient to overcome it. In short, the law of property, like other areas of the law, is not a mathematical science but takes shape at the direction of social and economic forces in an ever changing society, and decisions should be made to turn on these considerations."
See also, 2 Rohan & Reskin, Condominium Law and Practice, § 10.03[2] (1975); Simes & Smith, The Law of Future Interests, § 1168 (2nd ed. 1956):
"In last analysis a given rule as to restraints on alienation is a resultant of balancing the beneficial character of the purposes of the restraint as against the extent to which alienability would be hindered, if the provision in question were held valid... . One may well anticipate that, in the face of new purposes which are definitely in accord with good public policy, the courts may make new exceptions to the old doctrines with respect to direct restraints."
[2] There is a distinction between restraints on alienation and restraints on use. 25 Fla. Jur., Perpetuities and Restraints on Alienation, § 17 (1959). Appellant urges that we apply the reasoning of Holiday Out in America at St. Lucie, Inc. v. Bowes, 285 So.2d 63 (4th DCA Fla. 1973), wherein we held that a restraint on the method of leasing was not in violation of the rule against restraints on alienation. The appellees in that case were not prohibited from conveying a fee or a leasehold interest, but simply restricted in the manner in which they could do so.
[3] Appellees in fact had the benefit of this exception for one year, prior to bringing the instant suit, because the condominium association board concluded that since appellees' decedent's estate was still being administered, they did have a "special situation" or "practical difficulties" within the meaning of the provision. Appellees stipulated in the proceedings before the trial court, however, that they no longer fell within any of the enumerated special circumstances at the time that they filed this suit.