GEORGE J. FRANKLIN, JR., & others [1] vs. W. RUTH SPADAFORA
& others, trustees. [2]

Middlesex.    January 3, 1983. — April 13, 1983.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Real Property*, Restraint on alienation. *Condominiums*, By-laws, Re-
straint on alienation. *Constitutional Law*, Equal protection of laws.
*Due Process of Law*, Condominiums.

A by-law of a condominium trust limiting to two the number of condo-
minium units which could be owned by any one person or entity did
not constitute an unreasonable restraint on alienation. [766-772]

A by-law of a condominium trust limiting to two the number of con-
dominium units which could be owned by any one person or entity,
which was invoked to void a sale of a unit in the condominium com-
plex to a buyer who owned six units in the complex when the by-law
was adopted, did not deprive either the buyer or the sellers of due
process of law or deny them equal protection of the laws. [772-775]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 18, 1981.

The case was heard by *Hallisey, J.*

After review was sought in the Appeals Court, the
Supreme Judicial Court ordered direct appellate review on
its own initiative.

*John T. Cinella, Jr.*, for the plaintiffs.

*Paul F. Hennessey (Linda F. Gavin* with him) for the
defendants.

NOLAN, J.  The issue here is whether a trust by-law
adopted by the defendants, trustees of the Melrose Towers
Condominium Trust (trust), limiting to two the number of

---

[1] The other plaintiffs are Daniel Clarke and Florence A. Clarke.

[2] The other defendants, sued as trustees, are Nicholas Cserhalmi, Jef-
frey Banta, Hugh F. Lennon, Harry Schaller, and Donna Correia.

units in the Melrose Towers Condominium (condominium) which may be owned by any one person or entity, represents an unreasonable restraint on alienation or operates to deny the plaintiffs equal protection of the laws or due process of law. The case was submitted to a judge of the Superior Court on a statement of agreed facts. The judge entered a judgment declaring that the by-law was "valid and not unconstitutional." The plaintiffs appealed to the Appeals Court, and we transferred the case here on our own motion. We affirm.

The facts are as follows. On September 25, 1980, the trustees voted to amend the by-laws of the trust to restrict to two the number of condominium units which could be owned by any one person or entity.[3] The amendment was duly recorded in the registry of deeds. In adopting the amendment, the trustees acted pursuant to the applicable by-law and with the written consent of condominium unit owners holding 80.45% of the beneficial interest under the trust.

On the date of the amendment, the plaintiff George J. Franklin, Jr., owned six units in the condominium complex.[4] On October 17, 1980, Franklin, as buyer, executed a purchase and sale agreement with the plaintiffs, Daniel and Florence A. Clarke, as sellers, for the purchase of a condominium unit owned by the Clarkes. As required by the

---

[3] It appears that the amendment was an addition to the by-laws rather than an alteration of an existing by-law. The text of the amendment is as follows: "At no time shall title and ownership of more than two Units be vested in or held by the same natural person or persons, their agents, assigns, heirs, or nominees or by any corporation, trust organization or other entity, their agents, assigns, or nominees."

In his memorandum and order, the trial judge stated that "[t]he declared purpose of the amendment was the desire of the unit owners to maintain the condominium as a residential condominium with maximum occupancy by resident owners rather than lessees." However, no statement of purpose appears in the statement of agreed facts submitted to the judge or in any of the other materials submitted here as part of the record appendix.

[4] No issue is presented concerning the effect of the amendment on Franklin's ownership of these units.

Master Deed, the Clarkes then informed the trustees of the pending sale so that the trustees might exercise their right of first refusal. Thereafter, the trustees notified the Clarkes that the sale was in violation of the by-law amendment. Franklin and the Clarkes then brought this action in the Superior Court for declaratory relief from the by-law amendment. After the action was filed, the Clarkes sold the unit to Franklin on April 16, 1981. In his judgment upholding the validity of the by-law amendment, the judge also declared that "the Clarke-Franklin deed . . . is null and void."

I. *Restraint on Alienation.*[5]

Reasonable restraints on alienation may be enforced. *Dunham* v. *Ware Savs. Bank*, 384 Mass. 63, 66-67 (1981), and authorities cited. The following factors, if found, tend to support a conclusion that the restraint is reasonable: "1. the one imposing the restraint has some interest in land which he is seeking to protect by the enforcement of the restraint; 2. the restraint is limited in duration; 3. the enforcement of the restraint accomplishes a worthwhile purpose; 4 the type of conveyances prohibited are ones not likely to be employed to any substantial degree by the one restrained; 5. the number of persons to whom alienation is prohibited is small . . . ." Restatement of Property § 406 comment i (1944).[6] None of these factors is determinative, nor is the list exhaustive. Each case must be examined in light of all the circumstances. *Id.* However, we think that consideration of these factors in the context of the condo-

---

[5] This issue may be raised only by the Clarkes. There is no indication that Franklin desires to sell any of his units.

[6] A sixth factor — whether the one on whom the restraint is imposed is a charity — is not relevant to this case. The Restatement lists the following factors as tending to support a conclusion that the restraint is unreasonable: "1. the restraint is capricious; 2. the restraint is imposed for spite or malice; 3. the one imposing the restraint has no interest in land that is benefited by the enforcement of the restraint; 4. the restraint is unlimited in duration; 5. the number of persons to whom alienation is prohibited is large." Restatement of Property § 406 comment i (1944).

minium housing arrangement, see G. L. c. 183A, is suffi-
cient to demonstrate the reasonableness of the restraint here
at issue.[7]  See generally *Johnson* v. *Keith,* 368 Mass. 316
(1975).  We consider the factors seriatim.

1. *Interest in the land.*  In the context of condominium
housing, we do not interpret this factor as requiring that
those who seek to enforce the restriction possess an interest
in the specific unit at issue so long as they possess an interest
in the condominium complex where the unit is situated.
There is no question here but that the trustees possess such
an interest.

2. *Duration of restraint.*  The plaintiffs did not argue
before the trial judge that the restraint is unreasonable in
duration nor do they make such an argument here. There-
fore, we could treat the issue as waived.  *New England
Merchants Nat'l Bank* v. *Groswold,* 387 Mass. 822, 825 n.5
(1983); Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919
(1975).  However, because our case law indicates that a
restraint on alienation which may extend "for a period
beyond that fixed by the rule against perpetuities is contrary
to public policy and cannot be enforced," *Roberts* v. *Jones,*
307 Mass. 504, 508 (1940), and cases cited; see *Bowen* v.
*Campbell,* 344 Mass. 24, 26 (1962), we take time to touch
upon the issue of duration.

The amendment is not by its terms limited in duration.
However, the trust by-laws may be amended at any time by
the trustees, provided they have the written consent of unit
owners "entitled to not less than fifty-one percent (51%) of

---

[7] While we are not aware of any case where the precise issue presented
here has arisen, we note that other jurisdictions have upheld reasonable
restraints on alienation of condominium units.  See, e.g., *White Egret
Condominium, Inc.* v. *Franklin,* 379 So.2d 346 (Fla. 1979) (con-
dominium association sought to void sale of unit because in violation of
age restrictions; restriction upheld but sale approved because restriction
selectively and arbitrarily applied); *Ritchey* v. *Villa Nueva Condominium
Ass'n,* 81 Cal. App. 3d 688 (1978) (age restriction on condominium oc-
cupancy not unreasonable restraint on alienation).

the beneficial interest" under the trust.[8]  We think that this arrangement is a reasonable adjustment to the demands of condominium management and that the restraint at issue here, which is subject to the will of the majority in the manner described, is not unreasonable in duration.  See *Seagate Condominium Ass'n* v. *Duffy,* 330 So.2d 484, 486 (Fla. Dist. Ct. App. 1976).  To the extent cases such as *Bowen* v. *Campbell, supra,* and *Roberts* v. *Jones, supra,* proclaim as absolute a rule of public policy measured by the period fixed by the rule against perpetuities, we decline to apply slavishly the rule to a form of property ownership little known at the time that these cases were decided.[9] However, we caution that our decision is limited to the particular facts of this case.  Our decision might well be different if, for instance, the by-laws could not be amended at any time or if the restraint at issue precluded all alienation of the property or allowed alienation only to an unreasonably small number of people.

3. *Worthwhile purpose.*  The plaintiffs do not challenge the judge's finding that the "declared purpose" of the amendment was to encourage "maximum occupancy by resident owners."  See note 3, *supra.*  They do assert that there was no evidence to support the judge's further conclusions that "[i]mplicit in this purpose is the desire to impart a degree of continuity of residence, inhibit transiency and safeguard the value of investment" and that enforcement of rules and regulations against tenants is more difficult than with resident owners.  The plaintiffs ask us to take judicial notice of the current high mortgage interest rates and the limited stock of rental housing units in Melrose and the surrounding area.[10]  They argue that these factors preclude

---

[8] The trust by-law governing amendments further provides that "[n]othing in this [by-law] shall be construed as making it obligatory upon the Trustees to amend, alter, add to or change the Declaration of Trust upon obtaining the necessary consent as hereinbefore provided."

[9] General Laws c. 183A was originally enacted in 1963 (St. 1963, c. 493, § 1), after the decision in both *Bowen* and *Roberts.*

[10] The plaintiffs did not ask the judge to take judicial notice of these conditions. See *Commonwealth* v. *Kingsbury,* 378 Mass. 751, 754-755 (1979).

any finding that tenants in the relatively stable community of Melrose[11] would be more transient or less responsible than owners in such a community. Leaving aside the question of the appropriateness of our taking judicial notice of these conditions, and assuming that we did take such notice, the plaintiffs would not prevail. To the extent that the by-law would promote owner occupancy, we cannot conclude on this record that such an objective is against public policy or in itself not worthwhile.[12] Indeed, we agree with the trial judge that a "desire to impart a degree of continuity of residence, inhibit transiency and safeguard the value of investment" is implicit within the by-law amendment and its "declared purpose," and we think that such objectives are proper.[13] Those who live in condominiums must be willing to give up a certain degree of personal choice in order to promote the welfare of the majority of the owners. See *Hidden Harbour Estates, Inc.* v. *Norman,* 309 So. 2d 180, 181-182 (Fla. Dist. Ct. App. 1975).

On this point, the plaintiffs also contend that the by-laws themselves belie the purpose of the amendment because the by-laws would not prohibit a person who owns two units from leasing either or both of them. However, the amendment may also be construed as a compromise between the desire of the majority of unit owners to maintain the residential character of the condominium and the right of a

---

[11] The plaintiffs contrast the residential character of Melrose with the more transient character of tourist-oriented communities where restrictions on the right of a condominium owner to lease his unit have been upheld. See *Seagate Condominium Ass'n* v. *Duffy,* 330 So. 2d 484, 486-487 (Fla. Dist. Ct. App. 1976).

[12] We note that G. L. c. 183A, §§ 8 (g) and 11 (e), contemplate that restrictions will be placed on the intended uses of condominium units. Nothing in G. L. c. 183A prohibits the kind of restrictions at issue here.

[13] It is unclear to us whether the judge made his statement concerning the difficulty of enforcing rules and regulations against tenants as a finding of fact or as a matter of common knowledge. Strictly speaking, he would not have been warranted in making such a finding on the basis of the statement of agreed facts. However, the error, if any, was harmless.

person owning one or two units to use his property as he desires. As so construed, the amendment is a reasonable means of achieving the majority's proper goal.

4. *Type of conveyance prohibited.* The conveyance prohibited by the amendment is not any sale of a unit but only sale of a unit to a person who already owns two. There is nothing in the record to indicate how often such sales have been proposed. However, noting that the amendment applies to all unit owners and not just the Clarkes, we can safely assume that an amendment passed with the consent of persons holding 80.45% of the beneficial interest under the trust is not one which would prohibit a conveyance likely to be employed by those persons. We note also that the plaintiffs have failed to produce any evidence which would show that even those persons, other than the plaintiffs, who did not consent to the amendment were constrained in any substantial way.

5. *Number of persons affected.* The amendment allows alienation of the property to all persons except those who already own two units. Although the number of persons owning two units is not disclosed in the record, it is evident that this number is relatively small, if not minute, when compared to the number of persons to whom the Clarkes could properly sell their unit. There is nothing which would indicate that persons owning two units represent the only viable market for units in the condominium such that preclusion of those persons as permissible transferees effectively vitiates the Clarkes' power to sell. See Restatement of Property § 406, comment j (1944). For all that appears, Franklin may be the only prohibited transferee. We cannot conclude on this record that the number of persons to whom transfer is prohibited is unreasonable.

On the issue of reasonableness generally, the plaintiffs contend that the amendment is unreasonable because it has been applied against Franklin in an arbitrary and discriminatory manner. In so far as the amendment is a restraint on alienation, of course, it has not been applied against Franklin at all. Further, assuming arguendo that discrimination

against the buyer is a factor in determining the reasonableness of a restraint on alienation, the plaintiffs have made no showing that the amendment has not been or would not be applied to void sales to others in a position similar to Franklin. Compare *White Egret Condominium, Inc.* v. *Franklin,* 379 So. 2d 346 (Fla. 1979); *Laguna Royale Owners Ass'n* v. *Darger,* 119 Cal. App. 3d 670 (1981). If the plaintiffs' assertion that Franklin was the only person owning more than two units at the time of the amendment be taken as true, this alone would not establish that it was applied arbitrarily or discriminatorily against him. As noted above, we have no indication how many other persons, if any, owned two units at the time of the amendment.

We think that the plaintiffs cannot claim the benefit of any ambiguity whether the amendment would apply to a person, such as Franklin, who owned more than two units at the time the amendment was passed. See *Johnson* v. *Keith,* 368 Mass. 316, 320 (1975) (ambiguities to be construed against restraint), and cases cited. It does not appear that this issue was raised below. The judge made no findings on this point and, aside from the plaintiffs' general allegations that the amendment is "unenforceable against the plaintiffs" and "not binding on the plaintiffs," the question of ambiguity is not addressed in the complaint. We need not consider an issue raised for the first time on appeal. *Caswell* v. *Licensing Comm'n for Brockton,* 387 Mass. 864, 866 n.2 (1983).

As evident from the discussion above, the record in this case is deficient in a number of areas where more information might have tended to support the plaintiffs' claim. However, even on the best of records, we think that the plaintiffs could not prevail on their claim that the amendment was unreasonably restrictive, given the small number of persons to whom transfer would be prohibited. See Restatement of Property § 406, comment a (1944); Schnebly, Restraints Upon the Alienation of Legal Interests, 44 Yale L.J. 961, 1186 (1935). While we have had no need to elaborate on public policy considerations which are furthered

by the amendment at issue, we think that in this instance "the curtailment of the power of alienation is so slight that no social danger is involved." Restatement of Property, *supra.* "Reasonable restrictions concerning use, occupancy, and transfer of condominium units are necessary for the operation and protection of the owners in the condominium concept." *White Egret Condominium, Inc.* v. *Franklin,* 379 So. 2d 346, 350 (Fla. 1979). By way of comparison, we consider the restriction here no more onerous than the restriction upheld by the court in *Seagate Condominium Ass'n* v. *Duffy,* 330 So. 2d 484 (Fla. Dist. Ct. App. 1976). That restriction, by banning leasing except for limited times in special circumstances, effectively required the owner to occupy the unit.[14]

II. *The Constitutional Challenges.*

The plaintiffs here contend that the amendment has denied them equal protection of the laws and due process of law under the Fourteenth Amendment to the United States Constitution and arts. 1 and 10 of the Massachusetts Declaration of Rights. Specifically, they allege that Franklin has been "effectively denied his right to own property," and that both Franklin and the Clarkes have been denied "their constitutional rights to dispose of their property as they see fit."[15]

---

[14] The full text of the provision in *Seagate* was as follows: "As previously stated, it is the intent that the owner of each unit of Seagate Towers Condominium shall occupy and use such unit as a private dwelling for himself and his immediate family, and for no other purpose including business purposes. Therefore, the leasing of units to others as a regular practice for business, speculative, investment or other similar purposes is not permitted.

"To meet special situations and to avoid undue hardship or practical difficulties the Board of Directors may grant permission to an owner to lease his unit to a specified lessee for a period of not less than four consecutive months nor more than twelve consecutive months." *Seagate Condominium Ass'n* v. *Duffy,* 330 So. 2d 484, 484-485 (Fla. Dist. Ct. App. 1976).

[15] The plaintiffs do not challenge the procedures by which the amendment was adopted. Rather, they argue that they have been denied due process only because the amendment is "unequal." Unless there is a violation of the plaintiffs' rights of equal protection, therefore, there is no due process challenge to the amendment properly before us.

The judge found that there was no State action sufficient to trigger the constitutional guarantees claimed. Because we conclude that the amendment did not deprive the plaintiffs of any constitutional rights, we may assume, without deciding, that the amendment represents State action. See *Johnson* v. *Keith*, 368 Mass. 316, 321-322 (1975) (condominium by-laws, because amendable and compliance required, resemble municipal by-laws more than private deed restrictions). But see *Laguna Royale Owners Ass'n* v. *Darger*, 119 Cal. App. 3d 670, 683 (1981) (expressing doubt whether actions of condominium association constituted "state action").

There can be no doubt that the Fourteenth Amendment to the United States Constitution and the analogous provisions of our State Constitution safeguard the rights of property owners to use and enjoy their property. However, the rights are not absolute; they may be made subject to reasonable regulations designed to promote general welfare. See *Penn Cent. Transp. Co.* v. *New York City*, 438 U.S. 104, 123-128 (1978); *Belle Terre* v. *Boraas*, 416 U.S. 1, 9 (1974); *Home Bldg. & Loan Ass'n* v. *Blaisdell*, 290 U.S. 398, 428, 434-438 (1934); *Laguna Royale Owners Ass'n* v. *Darger*, *supra*. In the present case, we are not concerned with an unqualified right of the plaintiffs to buy or sell property. Rather, we are concerned with their rights to buy and sell property within the condominium. As unit owners, they are by statute subject to the terms of the condominium's by-laws. G. L. c. 183A, § 4 (3). Since the plaintiffs' decisions to purchase units within the condominium were no doubt voluntary, any restrictions imposed on the plaintiffs' rights to buy or sell property within the condominium are, for this reason, essentially self-imposed. "[T]he restriction is not a zoning ordinance adopted under the police power but rather a mutual agreement entered into by all condominium apartment owners of the complex. With this type of land use restriction, an individual can choose at the time of purchase whether to sign an agreement with these restrictions or limitations." *White Egret Condominium, Inc.* v. *Frank-*

*lin,* 379 So. 2d 346, 350 (Fla. 1979). In addition, and as noted previously, G. L. c. 183A, §§ 8 (*g*) & 11 (*e*), contemplate that restrictions may be imposed on the uses that may be made of units. In these circumstances, we do not view the amendment as impinging on fundamental rights of the plaintiffs. See *White Egret Condominium, Inc., supra.* Therefore, the amendment's limitation to two of the number of units a person may own does not set up a classification scheme requiring "strict scrutiny." See *New Orleans* v. *Dukes,* 427 U.S. 297, 303 (1976); *Klein* v. *Catalano,* 386 Mass. 701, 706-707 (1982).[16]

We have previously likened condominium trust by-laws to municipal by-laws. *Johnson* v. *Keith,* 368 Mass. 316, 322 (1975). We think that the test employed in determining the constitutional validity of municipal by-laws affecting economic relations is appropriate to the present inquiry, especially given our assumption that the amendment represents State action. Accordingly, we hold that, "[i]f a [by-law amendment] serves a legitimate purpose, and if the means the [condominium association] adopted are rationally related to the achievement of that purpose, the [amendment] will withstand constitutional challenge." *Shell Oil Co.* v. *Revere,* 383 Mass. 682, 686 (1981).[17]

---

[16] There is no question here of "inherently suspect distinctions such as race, religion, or alienage." *New Orleans* v. *Dukes,* 427 U.S. 297, 303 (1976).

[17] In *White Egret Condominium, Inc.* v. *Franklin,* 379 So. 2d 346 (Fla. 1979), the court held "that a condominium restriction or limitation does not inherently violate a fundamental right and may be enforced if it serves a legitimate purpose and is reasonably applied." *Id.* at 350. The court further held that a restriction in a condominium agreement which prohibited children under age twelve from residing in the premises was valid but refused to apply the agreement to void the transaction in question because the restriction had been selectively enforced against the person challenging it. *Id.* at 351-352. We think that the test employed in that case is not essentially different from the test we employ today. However, there was no discussion in *White Egret* whether the restriction represented "State action." Because we have assumed that the instant amendment constitutes "State action," we prefer to state our test for its validity in terms applicable to cases where "State action" is clearly present.

We have previously analyzed the legitimacy of the by-law's purpose, and we have held that limitation of ownership to two units represents a reasonable adjustment between the rights of unit owners to use their property and the desire of the owners of a majority of the beneficial interest to attempt to create a residential atmosphere within the condominium development. We think it sufficiently clear from the discussion of those matters that the amendment meets the test of validity we announce today.[18] We hold, therefore, that the by-law amendment did not deprive the plaintiffs of their rights to due process and equal protection.[19]

*Judgment affirmed.*

---

[18] We might also add that the Legislature's choice to require compliance with the by-laws furthers a permissible legislative goal. "Enforcement . . . fosters condominium development by attracting buyers seeking a stable, planned environment [and] also protects the contractual interests . . . of buyers who purchase their units in reliance on the existence of a restrictive scheme and who may pay a premium to obtain restrictions." Note, Judicial Review of Condominium Rulemaking, 94 Harv. L. Rev. 647, 653 (1980).

[19] We perceive no significant distinction between our inquiry under the Federal and State Constitutions on this issue. See *Shell Oil Co.* v. *Revere,* 383 Mass. 682, 686 n.7 (1981).