754 So.2d 831 (2000)
WOODSIDE VILLAGE CONDOMINIUM ASSOCIATION, INC., Appellant,
v.
Adolph S. JAHREN and Gary M. McClernan, Appellees.
No. 2D99-504.
District Court of Appeal of Florida, Second District.
April 5, 2000.
*832 James R. DeFurio of Becker & Poliakoff, P.A., Tampa, for Appellant.
Robert G. Walker, Jr., Clearwater, for Appellees.
CAMPBELL, Acting Chief Judge.
Appellant, Woodside Village Condominium Association, Inc. (Woodside), challenges a final summary judgment entered in favor of appellees, Adolph S. Jahren and Gary M. McClernan, each of whom owned individual residential condominium units in Woodside Village Condominiums. We affirm.
The final summary judgment invalidated as to appellees an amendment to the declaration of condominium that limited the leasing of units to a term of no more than nine months in any twelve-month period. Prior to the adoption of this lease restricting amendment, there were no substantial restrictions on leasing by unit owners so long as the parties did not violate association rules applicable to all unit owners. The original Declaration leasing provision stated:
10.3 Leasing. The apartment may be leased or rented without prior approval, for any period of one (1) year or less, and may be leased by successive leases for periods in excess of one (1) year without the approval of the Board of Directors of the Association. In the event apartment owner leases to a lessee for a period of one (1) year or less and the apartment owner and lessee desire to extend that lease for a term of one (1) year or less, said extension shall not require the approval of the Association. However, if the Association finds during the term of any such lease that the lessee has violated the rules and regulations of the Association or the terms and provisions of the Declaration of Condominium of Woodside Village or other documents governing Woodside Village, a Condominium, or that the lessee has otherwise been the cause of a nuisance or annoyance to the residents of Woodside Village, then the Association may so notify lessor of its disapproval of such lessee in writing and lessor shall be precluded from extending any lease to said lessee without the written approval of the Association.
Both appellees had purchased their units prior to the adoption of the lease restricting amendment. Both appellees had purchased their units not to reside in them, but as investment properties for the purpose of leasing. Both appellees had leased their units continuously since their purchase and desired to continue to do so.
Restrictions on leasing rights of condominium owners contained in a declaration of condominium do not inherently violate any fundamental right of the unit owners and may be enforced if not arbitrarily or discriminately applied. Such restrictions contained in a declaration of condominium in existence at the time unit *833 owners purchase their units are uniformly upheld. Use restrictions contained within declarations of condominiums are clothed with a very strong presumption of validity, which arises from the fact that each individual unit owner purchases his or her unit with the knowledge and acceptance of the restrictions imposed. Those affected by a declaration of condominium are entitled to rely upon the rights afforded or those prohibited by the declaration. Otherwise, the rights and obligations created by a declaration could be in a constant state of flux. See Constellation Condominium Association, Inc. v. Harrington, 467 So.2d 378 (Fla. 2d DCA 1985); Hidden Harbour Estates, Inc. v. Basso, 393 So.2d 637 (Fla. 4th DCA 1981).
General classifications of restrictions contained within declarations of condominium which apply to all owners equally and are not arbitrarily and discriminately applied need not pass a strict scrutiny test. We conclude, however, that amendments to declarations of condominium that are adopted subsequent to a unit owner's purchase and that significantly alter substantial rights that existed in unit owners at the time of their purchase do require a strict scrutiny as to whether they have unreasonably altered existing rights. When such an amendment is determined to be discriminatory, arbitrary or oppressive in its application to any particular unit owner, it will be held invalid as to that owner. See White Egret Condominium, Inc. v. Franklin, 379 So.2d 346 (Fla.1979).
Such is the case before us. When appellees purchased their units for investment leasing purposes, there existed no significant restriction against leasing. When the lease restricting amendment at issue was adopted some leases were permitted, but others that had been specifically authorized were prohibited. Unit owners were prohibited from leasing units for more than nine months in any twelve-month period. Therefore, all unit owners could lease their unit for nine months of every year, yet no owner could lease a unit for twelve months of any year. To apply this restriction to appellees would be arbitrary, discriminatory and oppressive.
The amendment deprived appellees of a valuable property right that existed at the time they purchased their units. See Mortgage Investors of Washington v. Moore, 493 So.2d 6 (Fla. 2d DCA 1986). Appellant argues that appellees' protected property rights were in the leases that existed at the time the amendment was adopted and therefore, when those leases expired, appellees no longer had any existing property rights related to leases. We disagree. The substantial property right that appellees acquired when they purchased their units was the unlimited "right to lease." When their unlimited right to lease was prohibited, their substantial property right was destroyed. See Pearlman v. Lake Dora Villas Management, Inc., 479 So.2d 780 (Fla. 5th DCA 1985).
We find appellant's reliance on Seagate Condominium Ass'n, Inc. v. Duffy, 330 So.2d 484 (Fla. 4th DCA 1976) to be misplaced as we find Seagate to be clearly distinguishable. If not distinguishable, we are in conflict. While Seagate appears factually similar to our case, it is not. Seagate is primarily a "restraints on alienation" case. The case before us on the other hand is solely a case which interprets rights acquired by reason of purchases of condominium units under terms of a declaration of condominium that is later substantially amended to destroy those rights without affording any avenue of relief. In Seagate, an amendment to the declaration of condominium was adopted which provided as follows:
As previously stated, it is the intent that the owner of each unit of Seagate Towers Condominium shall occupy and use such unit as a private dwelling for himself and his immediate family, and for no other purpose including business purposes. Therefore, the leasing of units to others as a regular practice for business, *834 speculative, investment or other similar purposes is not permitted.
To meet special situations and to avoid undue hardship or practical difficulties the Board of Directors may grant permission to an owner to lease his unit to a specified lessee for a period of not less than four consecutive months nor more than twelve consecutive months.
330 So.2d 484-85. The trial court in Seagate determined that the amendment was both an unreasonable restriction and an unlawful restraint on alienation and awarded damages for lost rents to the unit owners who had sought to invalidate the amendment. The Fourth District reversed, holding as follows:
It is our opinion that appellant's leasing restriction constitutes neither an unlimited nor unreasonable restraint on alienation. The restriction is not unlimited in several respects: it prohibits only a specific form of alienation, i.e., leasing; under general but not unlimited circumstances, i.e., the condominium association will consider its suspension in hardship for a not unlimited period of time, i.e., because it can be terminated at any time by a vote of the condominium unit owners pursuant to the amendment provisions of their Declaration of Condominium. The restriction, moreover, is reasonable. Given the unique problems of condominium living in general and the special problems endemic to a tourist oriented community in South Florida in particular, appellant's avowed objective to inhibit transiency and to impart a certain degree of continuity of residence and a residential character to their communityis, we believe, a reasonable one, achieved in a not unreasonable manner by means of the restrictive provision in question. The attainment of this community goal outweighs the social value of retaining for the individual unit owner the absolutely unqualified right to dispose of his property in any way and for such duration or purpose as he alone so desires.
330 So.2d at 486.
Without deciding whether we would approve the amendment in Seagate if it were before us in this appeal, Seagate presents several distinguishing factors. In Seagate, the amendment prohibited all leasing. It did not allow some leases but prohibit others. Inasmuch as it was a prohibition against all leasing, it could be found to promote its stated desired purpose of encouraging owner occupancy. That argument cannot reasonably be made regarding the amendment before us. In addition, as the Fourth District found and apparently relied upon, the Seagate amendment contained "escape" provisions that might alleviate undue hardship and practical difficulties. No such escape clauses are contained in the amendment before us. Finally, we are not confident of the acceptance of Seagate even within the Fourth District. In Hidden Harbour, where the Fourth District held in favor of a unit owner against a condominium association, the court stated its intent to "summarize the law in regard to the enforcement of use restrictions against condominium unit owners," Seagate, however, was neither discussed nor cited. Hidden Harbour, 393 So.2d at 638.
One of the "escape" provisions in the Seagate amendment that the court held might alleviate hardship was the provision that the leasing prohibitions could "be terminated at any time by a vote of the condominium owners pursuant to the amendment provisions of their declaration of condominium." We reject the reasoning that the option to rescind a prior amendment by the ability to further amend a declaration of condominium can breathe life into an amendment that is otherwise arbitrary or discriminatory.
Similarly, as it applies to the facts before us, we reject the reasoning and holding in Flagler Fed. Sav. & Loan Ass'n of Miami v. Crestview Towers Condominium Ass'n, Inc., 595 So.2d 198 (Fla. 3d DCA *835 1992). In a case with facts at least partially similar to the facts in this appeal before us, the Flagler court upheld, against unit owners, leasing restrictions contained in an amendment to a declaration of condominium. Flagler Federal (FFSL) became the mortgagee on Crestview Towers Condominium (Crestview) units 503 and 216. At the time FFSL acquired its mortgages, the declaration of condominium provided that unit owners could not lease their units without express approval of the association, but excluded from that leasing restriction institutional mortgagees acquiring title. In 1984, after FFSL acquired its mortgages, the declaration of condominium was amended to prohibit leasing entirely and eliminated the previous exclusion for mortgagees acquiring title. In 1987, FFSL acquired title to unit 503 by purchasing the unit at foreclosure sale. When FFSL attempted to lease the unit, the Association objected and FFSL filed suit seeking declaratory and injunctive relief. The trial court granted the Association summary judgment.
The Third District affirmed, holding that even though FFSL's title to unit 503 acquired at foreclosure sale dated back to the date of its mortgage, which predated the objectionable amendment, FFSL was nonetheless bound by the subsequent declarations amendment that completely prohibited leasing. The Flagler court reasoned that inasmuch as the original declaration contained a provision for amending the declaration, FFSL was therefore aware of the recorded declaration and its amendment provisions when FFSL accepted its mortgage and was therefore bound by subsequent amendments to the declaration. We conclude that the reasoning of the Flagler court is faulty. It makes no provision for, nor does it provide an "escape" for, unit owners whose substantial property rights are altered by amendments to declarations adopted after they acquire their property. As the Hidden Harbour court reasoned, such an interpretation leaves a unit owner unable to rely upon restrictions contained in a declaration subject to amendment, leaving the unit owners' property rights in a condition of "continuous flux."
We would address one final matter considered by the trial judge below and objected to by appellant. The trial judge partially based his summary judgment for appellees on a finding that: "Further, the amendment which allowed Abilities of Florida to purchase up to six units caused the creation of a separate class of units from those units that are bound by the amendment which is at issue."
At the time of the hearing on the motions for summary judgment, appellees requested that the trial judge consider what became known as the "Abilities Amendment to the Declaration." Appellant argues that the "Abilities Amendment" was not properly and timely before the trial judge. We would first call attention to the fact that the "Abilities Amendment" is not critical to our affirmance. We do, however, conclude that the matter was properly before the trial judge.
It is conceded by appellant that the "Abilities Amendment" was a valid and existing amendment to the Articles of Condominium. Because the entire Articles of Condominium document was properly before the trial judge for consideration, the "Abilities Amendment" was also before the court. The "Abilities Amendment" resulted from a federal court action that Abilities of Florida, Inc. (Abilities) had filed against appellant, alleging that the lease restricting amendment at issue before us violated the civil rights of the handicapped. Abilities is a corporation that obtains financing through HUD to purchase condominium units that Abilities then leases to handicapped persons. HUD refused to finance Abilities' purchase of six units at Woodside Village Condominiums because of the leasing restriction amendment at issue here. The federal court entered a temporary injunction against appellant barring the enforcement of the lease restricting amendment against Abilities.
*836 Abilities had also sought damages against appellant. The parties settled the federal lawsuit. One of the conditions of the court-approved settlement was that appellant would pass the "Abilities Amendment" so that Abilities could purchase six units at the condominium that would be excluded from the lease restricting amendment. Appellant presented to its membership the "Abilities Amendment," and it was passed by the membership. Appellant first argues that the "Abilities Amendment" should not be considered because it was not properly before the court. Appellant alternatively argues that the "Abilities Amendment" should not be considered in an equal protection argument regarding an arbitrary creation and treatment of two classes of unit owners because the "class" created by the "Abilities Amendment" resulted from the settlement of a contested claim involving alleged civil rights violations. We reject both appellant's arguments in regard to the "Abilities Amendment" and agree with appellees and the trial court that it created two classes of condominium unit ownership.
Affirmed.
PARKER and CASANUEVA, JJ., Concur.