Gants, J.
In 1948, the parties’ parents, Pierino and Concetta DiClemente (“Pierino” and “Concetta”), as tenants in the entireties, purchased a parcel of land on Jackson Street in Newton Center that contained a single-family home, later converted into a two-family house. In 1955, they subdivided their parcel of land into two lots:
a front lot, where their single-family home was located (“the front lot”); and
a rear lot, consisting of the rear area of the parcel and a strip of land that connects this rear area to Jackson Street (“the rear lot”). This type of rear lot is commonly referred to as a “pork chop lot,” because it resembles a pork chop — with the meat being the rear area and the bone being the strip of land that provided limited street frontage. A two-family house was later built on this rear lot.
Pierino DiClemente died on October 20, 1969, and Concetta became the sole owner of both the front and rear lots. Concetta lived in one of the units in the two-family house on the rear lot. On November 24, 1969, Concetta conveyed a one-half undivided interest in the house and land on the rear lot to her son, defendant Domenic DiClemente (“Domenic"), as tenants in common. Concetta died on December 28, 1997.
Under Concetta’s Last Will and Testament (“the Will”), which was probated in June 1998, Concetta made the following bequests:
She gave Dominic her one-half interest as tenants in common in the rear lot, thereby making Dominic the sole owner of the rear lot;
She gave her three daughters — plaintiffs Anna Venuto and Leontina Anastasia, and defendant Mary Louise Visco[1] (“the three sisters”) — the front lot as tenants in common but with one restriction: “So long as DOMENIC DICLEMENTE is an owner of the [rear lot], no sale or other conveyance of any interest in the [front lot] shall be valid without his written consent.” (Emphasis in original).
She divided the balance of her property equally among her four children; and
She appointed Domenic as the executor of her estate.
A dispute arose among the four children regarding the settlement of their mother’s estate, which was eventually resolved through a Settlement Agreement dated March 5, 1999. As part of this Settlement Agreement, the three sisters granted their brother Domenic “an additional right of first refusal respecting any potential sale of [the front lot].”
The Settlement Agreement sadly did not resolve all the problems that have divided the four children since their mother’s death. The “bone” of the rear “pork chop lot,” owned by Domenic, contained the driveway used both by Domenic to reach the garage of his house on the rear lot and by the three sisters (and their tenants) to reach the garage of their house on the front lot. On August 9, 1999, Domenic, through his attorney, informed the attorneys for his three sisters that, effective November 1, 1999, they were prohibited from using the common driveway even to gain access to their garage. This directive has yet to take effect, because Judge Herman Smith of this Court on October 21, 1999 preliminarily enjoined Domenic from prohibiting his three sisters and their tenants from gaining access to their home and garage via the driveway. In addition, the three sisters, none of whom reside in the house on the front lot, have attempted to put the front lot up for sale, but have found no broker who will accept the listing because of Domenic’s right of first refusal under the Settlement Agreement and the need for his written consent before any sale of the front lot can become valid.
Two of the three sisters — Ms. Venuto and Ms. Anastasia — have filed suit seeking two different forms of relief: (1) a declaratory judgment granting the front lot an easement over the driveway for ingress and egress only, bolstered by a permanent injunction enjoining Domenic from prohibiting ingress and egress by the owners of the front lot, their tenants, their visitors, and their tenants’ visitors; and (2) a declaratory judgment that the provision in the Will — "So long as DOMENIC DICLEMENTE is an owner of the [rear lot], no sale or other conveyance of any interest in the [front lot] shall be valid without his written consent" — is null and void because it is an unreasonable restriction on the alienation of property. This Court will address each issue in turn.

The Alleged Driveway Easement

When the parties’ parents created the “pork chop” rear lot in 1955, there was nothing written about an easement being granted upon the rear lot for the benefit of the front lot to permit ingress and egress into *540 the garage on the front lot. Nor, when Conceit a died, was there anything in her Will that spoke of an easement.
An easement, however, may exist by implication; it need not be granted in writing. In the context of this case, an easement by implication may exist if Pierino and Concetta DiClemente intended when they subdivided their parcel of land into a rear and front lot to permit the owner of the front lot to use the driveway that was part of the rear lot for ingress and egress into the garage on the front lot. If such an easement were not contemplated at the time because Pierino and Concetta planned to own both lots, an easement by implication may still exist if Concetta, following her husband’s death and in contemplation of her own, intended that her three daughters have an easement over the driveway sufficient to permit them and their tenants to enter and depart the garage on the front lot. See Perodeau v. O’Connor, 336 Mass. 472, 474 (1957) (intention of the parties is the “controlling factor" in determining whether an easement exists by implication).
There can be no doubt that the parties’ parents, prior to their death, intended that the front lot have the benefit of an easement over the driveway on the rear lot to permit entry to and exit from the garage on the front lot. In reaching this finding, it is plain that:
the “pork chop” shape of the rear lot was necessary to give the rear lot frontage on Jackson Street;
the frontage that was designated as part of the rear lot contained the driveway that had been used by the front lot to gain access to the garage;
apart from this common driveway, there was no other driveway that led to the garage on the front lot, and no other means for a vehicle to gain access to that garage;
from 1955, when the parcel was subdivided, until Concetta died in December 1997, those who resided on the front lot were permitted to use the common driveway for ingress and egress to the garage on the front lot. This practice did not cease in November 1969, when Domenic was conveyed the one-half undivided interest in the rear lot that previously had been held by his father; and
if no implied easement were found to exist and Domenic forbade use of this driveway for access to and from the garage on the front lot, the three sisters would need to seek the approval of the City of Newton for a new curb cut and, if the City gave approval, would have to construct a second driveway entirely on the front lot.
“(E)asements by implication generally are created when land under single ownership is severed and the easement is reasonably necessary for the enjoyment of one of the parcels.” Silverleib v. Hebshie, 33 Mass.App.Ct. 911, 912-13 (1992). It is crystal clear that an easement over the driveway for ingress and egress is reasonably necessary for the enjoyment of the front lot, and that Pierino and Concetta DiClemente intended that there be such an easement for the benefit of the front lot. It is inconceivable that Concetta wanted Domenic to deny his sisters and their tenants access to the driveway that had always been used as a common driveway by the houses on the front and rear lots.[2]
Therefore, this Court hereby issues a declaratory judgment that an easement by implication exists over the driveway on the rear lot for the benefit of the front lot allowing ingress and egress by the owners of the front lot, their tenants, their visitors, and their tenants’ visitors so that they may gain access to the house and garage on the front lot. Ancillary to this declaratory judgment, this Court permanently enjoins the defendant Domenic DiClemente from barring ingress and egress over this driveway by the owners of the front lot, their tenants, their visitors, and their tenants’ visitors. Nothing in this Order permits the owners of the front lot, their tenants, their visitors, and their tenants' visitors to park on the driveway in the rear lot.
This Court has considered whether the three sisters should be required to share in the maintenance of the common driveway. After careful consideration, recognizing the intense animosity among the parties and Domenic’s pettiness in attempting to bar access to the common driveway, this Court concludes that no cost-sharing should be ordered because any cost-sharing arrangement will likely be a source of additional conflict and, possibly, litigation. In short, a cost-sharing arrangement, under these circumstances, will be more trouble than it is worth.

The Disputed Provision in the Will

In Franklin v. Spadafora, 388 Mass. 764 (1983), the Supreme Judicial Court declared:
Reasonable restraints on alienation may be enforced . . . The following factors, if found, tend to support a conclusion that the restraint is reasonable: “1. the one imposing the restraint has some interest in land which he is seeking to protect by the enforcement of the restraint; 2. the restraint is limited in duration; 3. the enforcement of the restraint accomplishes a worthwhile purpose; 4. the type of conveyances prohibited are ones not likely to be employed to any substantial degree by the one restrained; 5. the number of persons to whom alienation is prohibited is small ...” Restatement of Property §406 comment i (1944). None of these factors is determinative, nor is the list exhaustive. Each case must be examined in light of all the circumstances.
Id. at 766. In applying these six factors to the restraint on alienation of the front lot that Concetta DiClemente included in her Will — "So long as DOMENIC DICLEMENTE is an owner of the [rear lot], no sale or other conveyance of any interest in the [front lot] shall *541 be valid without his written consent" — this Court makes the following findings and observations with respect to each factor:
1. Concetta had an interest in both the rear and front lot when she imposed this restraint on alienation. Domenic DiClemente, who is seeking to preserve the restraint, now is the sole owner of the rear lot, which he has an interest in protecting.
2. The restraint, by its terms, is limited to the natural life of Domenic provided he continues to own the rear lot. When he dies or sells or transfers the rear lot, the restraint ends. Concetta, in her Will, addressed the possibility that Domenic may die before her, and specifically provided that, in that event, the rear lot would be given “to his living issue by right of representation.” The specific reference to Domenic by name in the restraint on alienation provision reflects that this restraint is intended solely for Domenic, and not for his living issue or other heirs.
3. The enforcement of the restraint may accomplish a worthwhile purpose to the extent that it protects Domenic from having someone own the front lot who will be such a horrendous neighbor that he or she will substantially diminish his enjoyment of the rear lot or the fair market value of the rear lot. Enforcement would not accomplish a worthwhile purpose if Domenic were unreasonably to refuse written consent, and thereby make it effectively impossible for his sisters to sell the front lot except to him at a below-market price. The plaintiffs contend that any worthwhile purpose that the restraint on alienation may have is satisfied by the right of first refusal bestowed upon Domenic under the Settlement Agreement, but the right of first refusal protects Domenic from an awful neighbor only if he financially can afford to buy the property himself at the agreed-upon price.
4. The Will does not limit the restraint on alienation to any particular type of conveyance; it potentially applies to any conveyance of the property. Therefore, the risk of abuse of this provision is considerable, since it potentially could make the properly effectively impossible to sell.
5. Depending on how Domenic were to exercise his veto power over any sale, the number of persons to whom alienation is prohibited may either be very small or may include every prospective buyer.
Therefore, whether this restraint on alienation is reasonable and enforceable, or unreasonable and unenforceable, depends entirely upon how Domenic intends to exercise his veto power. If he intends to veto all prospective buyers or to veto some prospective buyers without compelling reason, then this restraint must be declared null and void, because it unreasonably interferes with alienation of the front lot. If, however, Domenic were to severely narrow the scope of his discretion so that it maybe exercised reasonably only to prevent his sisters from selling the property to someone who would become “the neighbor from Hell,” then the restraint on alienation may not be so broad or so undefined as to unreasonably interfere with alienation of the front lot. In view of this possible resolution, and out of respect for the wishes of Concetta as reflected in her Will, this Court will give Domenic the opportunity to narrow in writing the scope of his discretion regarding this restraint on alienation before it rules upon whether that provision in the Will is null and void. Therefore, this Court will give Domenic until August 10, 2001 to provide the Court with an affidavit setting forth his intent regarding the exercise of his discretion in the event of a prospective sale of the front lot. This Court will give the plaintiffs until August 15, 2001 to reply to that affidavit. After that date, this Court will render its decision regarding the reasonableness of the restraint on alienation in Concetta’s Will as limited, if at all, by Domenic’s affidavit.
ORDER
For the reasons stated above, this Court ORDERS as follows:
1. This Court hereby issues a declaratory judgment that an easement by implication exists over the driveway on the rear lot for the benefit of the front lot allowing ingress and egress by the owners of the front lot, their tenants, their visitors, and their tenants’ visitors so that they may gain access to the house and garage on the front lot.
2. Ancillary to this declaratory judgment, this Court permanently enjoins the defendant Domenic DiClemente from barring ingress and egress over this driveway by the owners of the front lot, their tenants, their visitors, and their tenants’ visitors.
3. Nothing in this Order permits the owners of the front lot, their tenants, their visitors, and their tenants’ visitors to park on the driveway in the rear lot.
4. This Court gives Domenic until August 10, 2001 to provide the Court with an affidavit setting forth his intent regarding the exercise of his discretion in the event of a prospective sale of the front lot. This Court will give the plaintiffs until August 15, 2001 to reply to that affidavit. After that date, this Court will render its decision regarding the reasonableness of the restraint on alienation in Concetta’s Will as limited, if at all, by Domenic’s affidavit.

 Ms. Visco is a defendant only because she did not wish to join her sisters in filing this lawsuit, and was brought into the case by the plaintiffs as a necessary party. She did not file any brief regarding these motions or attend the hearing.

 Since this Court finds an easement by implication, it need not consider whether there is also an easement by necessity.