642 So.2d 551 (1992)
METROPOLITAN DADE COUNTY, a political subdivision of the State of Florida, Appellant,
v.
SUNLINK CORPORATION, Appellee.
No. 91-509.
District Court of Appeal of Florida, Third District.
January 28, 1992.
On Motion for Rehearing Granted February 2, 1993.
Rehearing and Clarification of Opinion Denied September 14, 1994.
Robert A. Ginsburg, Dade County Atty., and Daniel A. Weiss, Asst. County Atty., for appellant.
Adorno & Zeder P.A., and Jon W. Zeder and Raoul G. Cantero, III, Coconut Grove, for appellee.
Before BASKIN, JORGENSON and GODERICH, JJ.
On Motion for Rehearing En Banc Granted February 2, 1993.
Rehearing and Clarification of En Banc Opinion Denied September 14, 1994.
BASKIN, Judge.
Metropolitan Dade County [County] appeals a final summary judgment declaring void as an unreasonable restraint on alienation a restrictive covenant binding property held by Sunlink Corporation [Sunlink]. We affirm the final summary judgment.
Sunlink acquired from American Telephone and Telegraph Company [AT & T], property that was subject to a Declaration of Restrictive Covenants. The Declaration, recorded by AT & T, provides as follows:
2. Industrial Zoning. As to all property which may be zoned thereunder to classification IU-C or other industrial classification, Owners agree that there will be no sales, leases or other transfers of ownership or right to possession or use, except to entities owned, controlled by, or affiliated with the Owner American Telephone and Telegraph Company ("Telephone"), which for the purpose hereof includes, but is not limited to, Southern Bell Telephone & Telegraph Co. and Western Electric Company.
... .
12. Term of Restrictions. These covenants are to run with the land, and shall be binding on all parties and all persons claiming under it for a period of thirty (30) years from the date these covenants are recorded, after which time they shall be extended automatically for successive periods *552 of ten (10) years, unless an instrument signed by a majority of the then owner(s) of the real property and a majority of those within 500 feet of the boundary of the property has been recorded, agreeing to change the covenants in whole or in part, providing the covenants have first been released by the Commission.
In an effort to obtain rezoning of its property, AT & T recorded the Declaration in 1974 to assure the County's Board of County Commissioners [Board] that AT & T's zoning application representations were true and correct. AT & T hoped to persuade the Board to grant its rezoning request. Consequently, the property, originally zoned for residential use, was rezoned to light industrial use. In 1984, pursuant to AT & T's divestiture, a 70 acre parcel of the property was transferred to Sunlink. By 1989, however, the nature of the telecommunications industry had changed to such an extent that Sunlink needed only a small portion of the property, and no permitted transferee had any use for the remainder of the property. No further industrial application remained, and any other use would be incompatible with the surrounding residential areas.
Sunlink contracted to sell the property, but the sale was impeded by the restrictive covenant as the prospective buyer was not in the covenant's permitted class of purchasers. Sunlink filed an action against the County,[1] seeking a declaratory judgment invalidating the covenant. It predicated the lawsuit on changed circumstances and unreasonable restraint on alienation. When Sunlink filed a motion for summary judgment, the trial court granted the motion, and entered summary final judgment, finding:
as a matter of law that that portion of Paragraph 2 set forth herein of the aforesaid Declaration of Restrictive Covenants constitutes an unreasonable and illegal restraint upon [Sunlink's] right to alienate, transfer use and convey its property and is therefore void ab initio and of no further force and effect.
The final summary judgment announced that "[n]othing contained herein shall effect [sic] the land use designation or zoning of the property owned by SUNLINK CORPORATION which may only be changed pursuant to the ordinances and procedures established by Dade County." On appeal, the County raises several issues; one merits discussion.[2]
The central issue is whether the restrictive covenant is invalid as an unreasonable restraint on alienation. "[C]ourts have traditionally undertaken to determine the validity of restraints by measuring them in terms of their duration, type of alienation precluded, or the size of the class precluded from taking." Seagate Condominium Ass'n, Inc. v. Duffy, 330 So.2d 484, 485 (Fla. 4th DCA 1976). The first consideration is the duration of the restraint. The duration of the restrictive covenant at issue is thirty years; it will remain in effect until the year 2004. After termination of the initial thirty-year period, the covenant continues automatically for ten-year periods, unless Sunlink obtains a release from the Board and a release from a majority of the property owners whose property is within 500 feet of the boundary of Sunlink's property. At the present time, the land within 500 feet of Sunlink's property is developed for a variety of uses: single family residential, townhouse residential, condominium residential, apartment rental residential, commercial and industrial. The number of persons and entities whose properties lie within 500 feet of the boundary of Sunlink's property is between five and nine thousand. *553 The impracticality of obtaining a release from a majority of such a large number of property owners is obvious. Under these circumstances, the duration of the covenant is unreasonable.
Henthorn v. Tri Par Land Dev. Corp., 221 So.2d 465 (Fla. 2d DCA 1969), and Balzer v. Indian Lake Maintenance, Inc., 346 So.2d 146 (Fla. 2d DCA 1977) are distinguishable. While both cases approved covenants of fixed duration, those covenants did not restrict the alienability of property. Henthorn, 221 So.2d 465 (covenant providing for annual charge to lot owners, not to exceed $120.00 per year, for purpose of maintenance of recreational areas and facilities not unreasonable); Balzer, 346 So.2d 146 (covenant providing for payment of maintenance fees not unreasonable despite provision for automatic extensions of covenant duration).
The second consideration is the type of alienation precluded. Seagate Condominium. The alienation precluded by the subject restrictive covenant is alienation of title; the restrictive covenant forbids "transfers of ownership or right to possession" except to AT & T affiliates under all circumstances. Compare Seagate Condominium, 330 So.2d 484 (restriction that prohibits only leasing of property under certain circumstances is not unreasonable or unlimited restraint on alienation); Holiday Out in America at St. Lucie, Inc. v. Bowes, 285 So.2d 63 (Fla. 4th DCA 1973) (condominium declaration that grants developer exclusive right to undertake to rent units is not a restraint on alienation). The extent of the preclusion renders the covenant an unreasonable and virtually unlimited restraint.
The third consideration is the size of the precluded class. Seagate Condominium. All persons or entities not affiliated with, owned, or controlled by AT & T, an enormous class, are forbidden from taking. Thus, it is apparent that the restrictive covenant binding Sunlink's property violates all three considerations, and is unreasonable. Seagate Condominium, 330 So.2d at 486.
Moreover, "[t]he validity or invalidity of a restraint depends upon its long-term effect on the improvement and marketability of the property." Iglehart v. Phillips, 383 So.2d 610, 614 (Fla. 1980). The restrictive covenant in question unreasonably limits the marketability of the property.[3] The rule against unreasonable restraints on alienation endeavors to "ensure that property is reasonably available for development by prohibiting restraints that remove property from a beneficial use for an extended period of time." Iglehart, 383 So.2d at 613; Johnson v. Girtman, 542 So.2d 1033 (Fla. 3d DCA 1989). This restrictive covenant contravenes that purpose by rendering the property useless. Notwithstanding the parties' intent in entering into the covenant, where, as here, a change in circumstances renders the property unmarketable, enforcement of the covenant would be inequitable. See Iglehart. Cf. Sinclair Refining Co. v. Watson, 65 So.2d 732 (Fla.) (en banc) (circumstances had not sufficiently changed to make enforcement of a covenant restraining certain uses of a property inequitable), cert. denied, 346 U.S. 872, 74 S.Ct. 121, 98 L.Ed.2d 381 (1953). For these reasons, we conclude that the trial court correctly found that the restrictive covenant constitutes an unreasonable restraint on alienation.
Affirmed.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, FERGUSON, JORGENSON, COPE, LEVY, GERSTEN and GODERICH, JJ.
GODERICH, J., concur.
JORGENSON, Judge, dissenting.
I respectfully dissent.
In 1974, AT & T sought a zoning change to allow for light industrial use of residential property it owned. AT & T proffered a *554 Declaration of Restrictive Covenants to the Dade County Board of Commissioners [the County] in an effort to induce the County to rezone the area. To assure the preservation of the property and the surrounding community, the covenants were to run with the land, therefore binding subsequent property owners. As a result of AT & T's recordation of the Declaration, the County rezoned the property.
After ten years, AT & T transferred a portion of the property to its wholly owned subsidiary, Sunlink Corporation [Sunlink]. Five years later, Sunlink contracted to sell a parcel of its property. This prospective sale was predicated upon the removal of the restrictive covenant and upon Sunlink's obtaining a rezoning of the subject property.[1]
In determining whether the restrictive covenant is an unreasonable restraint on alienation, the court misapplies the factors set forth in Seagate Condominium Ass'n, Inc. v. Duffy, 330 So.2d 484 (Fla. 4th DCA 1976).

Duration of the Restraint
I disagree with the conclusion that the release mechanism incorporated into the covenant was impracticable and rendered the duration of the covenant unreasonable. The covenant was to endure thirty (30) years, with a provision for automatic ten-year extensions. As noted in 7 Fla.Jur.2d Building, Zoning, and Land Controls § 36 (1978),
Where the duration of a restrictive covenant is specifically provided for in the covenant, the covenant must expire by its own terms and limitations. The fact that the specific limitation for restrictive covenants is a long time, with provision for automatic extensions subject to the vote of a majority of the landowners will not permit [a] successor to abandon the covenants on the ground that they constitute a perpetual charge. (Footnotes omitted.)
The restrictive covenant in this case is specifically subject to cancellation and/or modification. All that is required is a written agreement signed by the majority of property owners and neighbors. Covenants with similar clauses have been held valid in Florida. See, e.g., Henthorn v. Tri Par Land Dev. Corp., 221 So.2d 465 (Fla. 2d DCA 1969) (restrictive covenant which ran with land and which was binding on developer and purchasers until January 1, 2000, was valid), receded from on other grounds, Balzer v. Indian Lake Maintenance, Inc., 346 So.2d 146 (Fla. 2d DCA 1977) (covenant which remained in force until stated date and which was automatically renewable every ten-year period thereafter, if the owners of at least two thirds of lots did not agree in writing to change or abrogate it, was valid).[2] The covenant in this case will end its initial thirty-year period in the year 2004. Although the duration of the restraint is significant, it is by no means perpetual.

Type of Alienation Precluded
The court is also mistaken in finding that the alienation precluded by the covenant is virtually unlimited, as it failed to consider the circumstances surrounding the creation of the covenant. The restrictive covenant was created and recorded to preserve the nature of the neighborhood and to induce the county to change the zoning classification.[3] "The *555 intention of the parties to [a] covenant, construed in the light of the surrounding circumstances, as expressed in the whole of the instrument containing the covenant, not the opinion of witnesses as to whether a different use of premises conveyed would be helpful or detrimental, is controlling." Sinclair Refining Co. v. Watson, 65 So.2d 732, 733 (Fla. 1953) (emphasis added) cert. denied, 346 U.S. 872, 74 S.Ct. 121, 98 L.Ed. 381 (1953).
Preserving the character of a neighborhood for the general welfare of the public has been held to be a reasonable objective. See, e.g., Metropolitan Dade County v. Fontainebleau Gas & Wash, Inc., 570 So.2d 1006 (Fla. 3d DCA 1990) (property owner's offer of restrictive covenant limiting use of property in effort to obtain change in zoning was made in public interest and is binding on property). The court's emphasis on the alleged unmarketability of the property is misguided. See AC Assocs. v. First Nat'l Bank of Fla., 453 So.2d 1121, 1131 (Fla. 2d DCA 1984) (highest and best use criterion not the correct test to determine validity of restrictive covenant). The appropriate inquiry is
whether or not the covenant is valid on the basis that the original intention of the parties can be carried out despite alleged materially changed conditions or, on the other hand, whether the covenant is invalid because changed conditions have frustrated the object of the covenant without fault or neglect on the part of the party who seeks to be relieved from the restrictions.
AC Associates, 453 So.2d at 1127. The restrictive covenant in this case continues to preserve the character of the neighborhood and is therefore "reasonable when judged in view of the justifiable expectations of the parties." Johnson v. Girtman, 542 So.2d 1033, 1036 (Fla. 3d DCA 1989), citing Malouff v. Midland Fed. Sav. & Loan Ass'n, 181 Colo. 294, 509 P.2d 1240 (1973) (validity of restraint on alienation depends upon reasonable expectations of parties).

Size of Precluded Class
Although the precluded class is large, it is obviously not absolute or unlimited and is therefore not unreasonable. The rule against restraints on alienation has "long been recognized as precluding only unlimited or absolute restraints on alienation." Seagate, 330 So.2d at 485, citing Robinson v. Randolph, 21 Fla. 629, (1885) (emphasis in text); Davis v. Geyer, 151 Fla. 362, 9 So.2d 727 (1942). The covenant in question merely precludes all persons or entities not affiliated with, owned, or controlled by AT & T from purchasing and/or leasing the subject property. If AT & T or its successor Sunlink Corporation, wish to remove or modify the restrictive covenant, they can follow the outlined steps provided in the Declaration of Restrictive Covenants. If the parties do not wish to follow that procedure, they have the option to petition the County for a return to the status quo, ante.

Conclusion
In sum, the duration of the restrictive covenant is reasonable; the type of alienation precluded is legitimate, and the size of the class precluded from taking is reasonable, as it is not unlimited or absolute. For the foregoing reasons, I would reverse the final summary judgment and remand this case to the trial court with directions to grant the County's motion to dismiss.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, JORGENSON, COPE, LEVY, GERSTEN, and GODERICH, JJ.

ON MOTION FOR REHEARING EN BANC GRANTED
PER CURIAM.
Metropolitan Dade County moved for rehearing en banc contending that the majority panel opinion misapplied the rule of law relating to the enforceability of restrictive covenants announced in Metropolitan Dade County v. Fontainebleau Gas & Wash, Inc., 570 So.2d 1006 (Fla. 3d DCA 1990). We granted rehearing en banc and now adopt *556 Judge Jorgenson's dissent to the panel opinion as the opinion of the en banc court. We reverse the order that declared the restrictive covenant unreasonable and remand with directions to grant the County's motion to dismiss without prejudice to seek release from the covenant by the mechanism prescribed in the covenant itself and for such further proceedings as shall be necessary.
Reversed.
SCHWARTZ, C.J., and BARKDULL, NESBITT, FERGUSON, JORGENSON, LEVY and GERSTEN, JJ., concur.
COPE, Judge (specially concurring).
Whether a restrictive covenant is an unreasonable restraint on alienation is ordinarily a factual issue. Here, Sunlink moved for summary judgment solely on the basis of the text of the restrictive covenant. Sunlink argued that the covenant was, on its face, an unreasonable restraint on alienation and void ab initio. As the County accurately characterizes the record, Sunlink's motion for summary judgment was "unsupported by any affidavit, request for admission, interrogatory answer, or deposition." (Supplemental Brief of appellant Metropolitan Dade County, at 13. In the absence of any factual showing that the covenant actually operates as an unreasonable restraint on alienation, the summary judgment must be reversed. In addition, in the absence of any showing that Sunlink has attempted to comply with any of the release mechanisms contained in the covenant itself, it is appropriate to dismiss the action at this time for failure to exhaust available remedies.
I am unable to agree with so much of the opinion as suggests that the restrictive covenant is reasonable. The present record is not adequate to support a factual determination that the covenant is reasonable, any more than it supports a determination that the covenant is unreasonable. Any determination on that score is premature until Sunlink has attempted to comply with the release mechanisms contained in the restrictive covenant.

ON REHEARING EN BANC
BASKIN, Judge (dissenting).
I am unable to join the court's opinion granting Metropolitan Dade County's Motion for Rehearing En Banc for several reasons. Contrary to the en banc opinion's conclusions: 1) the majority panel opinion correctly applied the rules of law governing the enforceability of restrictive covenants; 2) these rules were not announced in Metropolitan Dade County v. Fontainebleau Gas & Wash, Inc., 570 So.2d 1006 (Fla. 3d DCA 1990); and 3) Fontainebleau Gas & Wash, Inc., is inapposite to the issue before this court. Furthermore, summary judgment is proper; the question presented here is a question of law appropriately decided by the trial court.

I. HISTORICAL BACKGROUND OF COVENANT ENFORCEMENT
Restraints on alienation began as a corollary of the feudal system, and survive today as a testament to "a common human frailty which causes each person to believe that he knows what will be desirable in the future better than those who will then be living." 5B Richard R. Powell, The Law of Real Property, Para. 839 (1992). The Restatement (Second) of Property, Part II, Introductory Note (1981), delineates the origins of the law dealing with restraints on the alienation of property. However, "[m]uch of modern property law operates on the assumption that freedom to alienate property interests which one may own is essential to the welfare of society." Id. A restraint on alienation occurs where "a person either by the terms of a transfer or by contract seeks to eliminate the power of successors or of present owners to transfer property or to lessen the likelihood of their exercise of this power by stating adverse consequences of an attempt later to transfer... ." Id.
Such a restraint is invalid if it makes it impossible to transfer the interest. Id. § 4.1(1). Restraints that create an absolute ban on alienation may not be imposed on legal estates in fee simple. Powell, supra, Para. 840. Furthermore, restraints based on the consent of another prior to alienation have usually been nullified. Id. at Para. 842 *557 n. 14. These rules, if applied here, would render the restraint in the covenant invalid as thwarting transfer of the land, because no willing buyers exist within the class of permitted purchasers.
The law in Florida is well settled that the validity of restraints on alienation must be determined by measuring the "terms of their duration, type of alienation precluded, or the size of the class precluded from taking." Seagate Condominium Ass'n, Inc. v. Duffy, 330 So.2d 484, 485 (Fla. 4th DCA 1976). Based on an analysis of these factors, the panel opinion properly determined that the restraint in the covenant before the court constituted an unreasonable restraint on alienation, and that the court properly nullified the restraint in keeping with the wellestablished policy principles enunciated in the Restatement and treatises on this topic. See 4A George W. Thompson, Real Property, § 2016 (1979). When it is reviewed against this background and history, the dissent, adopted in the court's opinion en banc, fails as an incorrect application of the law.

II. METROPOLITAN DADE COUNTY v. FONTAINEBLEAU GAS & WASH, INC.
The majority panel opinion correctly applied the rule enunciated in Metropolitan Dade County v. Fontainebleau Gas & Wash, Inc., 570 So.2d 1006 (Fla. 3d DCA 1990). In Fontainebleau Gas & Wash, Inc., the County sought reversal of an order enjoining the County from interfering with further development of certain property. The County issued the necessary permits to allow the property owners to construct a gasoline station on the property. However, when the construction was almost complete, the County discovered that the use of the property for a gasoline station, was illegal: fifteen years earlier, the County Commission had rezoned the property for use only as a bank or savings and loan, in exchange for the property owner's restrictive covenant to the effect that the property would only be used for a bank or savings and loan. However, the covenant was never recorded. This court, in Fontainebleau Gas & Wash, Inc., held that the issuance of a building permit for the erection of a structure in contravention of the property's zoning did not excuse compliance with zoning requirements and with a restrictive covenant referenced on the zoning map.
In resolving the dispute between the County, which sought to enforce the zoning restriction on the property, and the subsequent property owner, which sought to continue construction based on the permits already issued, this court reasoned:
Owners are deemed to purchase property with constructive knowledge of applicable land use regulations. The Dade County Code contains clear provisions of which all property owners are on notice. The code creates various zoning categories, including the BU-1A, Limited Business District, section 33-246 Dade County Code, which is the basic set of regulations applicable to the subject property. If unrestricted, this category would permit a gas station on the subject property. Additionally, however, are the sections providing for further restrictions as to specific properties. Thus section 33-33 of the code provides that applications "may be granted subject to all reasonable restrictions and conditions deemed necessary... ." This power to subject property to further restriction if emphasized in section 33-315 of the code where the board of county commissioners is authorized to "take final action upon any and all matters and requests contained in the application... ." This section further provides that when final action has been taken by the board:
its record, together with a certified copy of its minutes and resolution pertaining to such action shall be transmitted to the Department for filing, and the same shall be open to the public... .
The application that was under consideration by the board when it enacted Resolution No. Z-93-75 was solely for the explicit use of the property as a bank or savings and loan. The county acted on that specific matter before it and approved, by resolution, the property's use as a bank or savings and loan. Pursuant to section 33-315 of the code, this resolution became part of the public record. Such a restriction on the property's use which was made *558 in the public interest became binding upon the property.
Code section 33-3 provides for zoning maps to be kept in the Building and Zoning Department and for all modifications to be shown on these maps. Section 33-305 provides the board shall by resolution adopt, approve, and ratify the maps as originally adopted and as modified, amended, and changed by subsequent resolutions and also provides that the director shall maintain these maps.
Thus the public is on notice that the county applies the basic code provisions by resolution; that these resolutions which are passed subsequent to public hearing can modify districts and restrict property use; and that the rights of property owners can thus be limited. Anyone attempting to learn what, if any, use limitations apply to his property need only turn to the applicable resolution. The zoning map in the instant case contained a clear reference directing the reader's attention to Resolution Z-93-75.
Finally, since the property owners were bound by law to be on notice of the provisions of Section 33, they cannot claim detrimental reliance on the permit inadvertently issued by the county. Resolution Z-93-75 demonstrates on its face that construction of a gas station would be illegal and that the property is limited to use as a bank or savings and loan. Therefore, while building permits were subsequently issued by government officials, estoppel will not lie for prohibited acts. As pointed out in Gayer, while application of the rule may appear harsh,
it would be inconceivable that public officials could issue a permit, either inadvertently, through error, or intentionally, by design, which would sanction a violation of an ordinance adopted by the legislative hand of the government. Only the duly constituted members of the Metropolitan Dade County Commission enjoy that prerogative and then only in accordance with established procedure.
Fontainebleau Gas & Wash, Inc., 570 So.2d 1006, 1007-08 (citations omitted).
I am unable to find language in Fontainebleau Gas & Wash, Inc., to support this court's en banc conclusion that the original panel opinion misapplied "the rule of law relating to the enforceability of restrictive covenants announced in Metropolitan Dade County v. Fontainebleau Gas & Wash, Inc., 570 So.2d 1006 (Fla. 3d DCA 1990)." Op. at 559.
Unlike the issue litigated in Fontainebleau Gas & Wash, Inc., the issue before us is the enforceability of a restrictive covenant, not an attempt to circumvent a zoning restriction. Sunlink has conceded that it is bound by the applicable property zoning provisions. Sunlink also concedes that any change in zoning must be pursued through the County Commission. This concession, however, should not serve to curtail Sunlink's right to seek redress, at law, from an illegally restrictive covenant. It should be unnecessary to point out that the County Commission lacks the authority to provide the relief Sunlink seeks here.
Moreover, Sunlink is not attempting to circumvent the restrictive covenant. Sunlink is merely attempting to litigate its position that the restrictive covenant constitutes an unreasonable restraint against alienation. Sunlink has neither put the property to an illegal use nor has it sought a zoning variance. Sunlink merely challenges the validity of a restrictive covenant.
Furthermore, the surrounding property owners would not be harmed by a resolution of this issue in Sunlink's favor. Sunlink's purpose is to have the court declare illegal a covenant that restricts alienation of the property to an ATT affiliate. It does not intend to put the property to any new use. Thus, the surrounding property owners will still enjoy the benefit of the property's light industrial use zoning until it is rezoned pursuant to County Commission procedures.

III. AVAILABILITY OF ALTERNATIVE REMEDIES
It must also be noted that the concurrence's proposal that Sunlink pursue alternate remedies misperceives the issue. The trial court properly granted summary judgment *559 because, as a matter of law, the restrictive covenant in question fails the test set forth in Seagate Condominium Ass'n, and constitutes an unreasonable restraint on alienation.
The avenue Sunlink must pursue in its attempt to be released from the covenant is irrelevant. There is no requirement that a litigant seek release from a covenant which is an illegal restraint on alienation by the methods provided in that very covenant before seeking declaratory relief from the illegal restraint. An illegal contract does not become legal merely because it provides a means for the parties to rescind. Sunlink's declaratory judgment action was the appropriate remedy for obtaining a determination of rights or status under a restrictive covenant. Lambert v. Justus, 335 So.2d 818 (Fla. 1976); § 86.021, Fla. Stat. (1989); see § 86.111, Fla. Stat. (1989) ("The existence of another adequate remedy does not preclude a judgment for declaratory relief."). In conclusion, this is an action for declaratory relief, not for rezoning of property; there are no adequate administrative remedies; and there need not be an exhaustion of administrative remedies prior to instituting the action. Junco v. State Bd. of Accountancy, 390 So.2d 329, 331 (Fla. 1980).

IV. CONCLUSION
I would adhere to the panel opinion and would hold that the trial court correctly concluded that the restrictive covenant constitutes an unreasonable restraint on alienation.
HUBBART and GODERICH, JJ., concur.

ON APPELLEE'S MOTION FOR REHEARING OR CLARIFICATION OF EN BANC OPINION AND MOTION FOR CERTIFICATION
PER CURIAM.
Motions denied.
SCHWARTZ, C.J., and BARKDULL, NESBITT, JORGENSON, LEVY and GERSTEN, JJ., concur.
BASKIN, Judge (dissenting).
I am unable to join the court's opinion granting Metropolitan Dade County's Motion for Rehearing En Banc for several reasons. Contrary to the en banc opinion's conclusions: 1) the majority panel opinion correctly applied the rules of law governing the enforceability of restrictive covenants; 2) these rules were not announced in Metropolitan Dade County v. Fontainebleau Gas & Wash, Inc., 570 So.2d 1006 (Fla. 3d DCA 1990); and 3) Fontainebleau Gas & Wash, Inc., is inapposite to the issue before this court. Furthermore, summary judgment is proper; the question presented here is a question of law appropriately decided by the trial court.

I. HISTORICAL BACKGROUND OF COVENANT ENFORCEMENT
Restraints on alienation began as a corollary of the feudal system, and survive today as a testament to "a common human frailty which causes each person to believe that he knows what will be desirable in the future better than those who will then be living." 5B Richard R. Powell, The Law of Real Property, Para. 839 (1992). The Restatement (Second) of Property, Part II, Introductory Note (1981), delineates the origins of the law dealing with restraints on the alienation of property. However, "[m]uch of modern property law operates on the assumption that freedom to alienate property interests which one may own is essential to the welfare of society." Id. A restraint on alienation occurs where "a person either by the terms of a transfer or by contract seeks to eliminate the power of successors or of present owners to transfer property or to lessen the likelihood of their exercise of this power by stating adverse consequences of an attempt later to transfer... ." Id.
Such a restraint is invalid if it makes it impossible to transfer the interest. Id. § 4.1(1). Restraints that create an absolute ban on alienation may not be imposed on legal estates in fee simple. Powell, supra, Para. 840. Furthermore, restraints based on *560 the consent of another prior to alienation have usually been nullified. Id. at Para. 842 n. 14. These rules, if applied here, would render the restraint in the covenant invalid as thwarting transfer of the land, because no willing buyers exist within the class of permitted purchasers.
The law in Florida is well settled that the validity of restraints on alienation must be determined by measuring the "terms of their duration, type of alienation precluded, or the size of the class precluded from taking." Seagate Condominium Ass'n, Inc. v. Duffy, 330 So.2d 484, 485 (Fla. 4th DCA 1976). Based on an analysis of these factors, the panel opinion properly determined that the restraint in the covenant before the court constituted an unreasonable restraint on alienation, and that the court properly nullified the restraint in keeping with the wellestablished policy principles enunciated in the Restatement and treatises on this topic. See 4A George W. Thompson, Real Property, § 2016 (1979). When it is reviewed against this background and history, the dissent, adopted in the court's opinion en banc, fails as an incorrect application of the law.

II. METROPOLITAN DADE COUNTY v. FONTAINEBLEAU GAS & WASH, INC.
The majority panel opinion correctly applied the rule enunciated in Metropolitan Dade County v. Fontainebleau Gas & Wash, Inc., 570 So.2d 1006 (Fla. 3d DCA 1990). In Fontainebleau Gas & Wash, Inc., the County sought reversal of an order enjoining the County from interfering with further development of certain property. The County issued the necessary permits to allow the property owners to construct a gasoline station on the property. However, when the construction was almost complete, the County discovered that the use of the property for a gasoline station, was illegal: fifteen years earlier, the County Commission had rezoned the property for use only as a bank or savings and loan, in exchange for the property owner's restrictive covenant to the effect that the property would only be used for a bank or savings and loan. However, the covenant was never recorded. This court, in Fontainebleau Gas & Wash, Inc., held that the issuance of a building permit for the erection of a structure in contravention of the property's zoning did not excuse compliance with zoning requirements and with a restrictive covenant referenced on the zoning map.
In resolving the dispute between the County, which sought to enforce the zoning restriction on the property, and the subsequent property owner, which sought to continue construction based on the permits already issued, this court reasoned:
Owners are deemed to purchase property with constructive knowledge of applicable land use regulations. The Dade County Code contains clear provisions of which all property owners are on notice. The code creates various zoning categories, including the BU-1A, Limited Business District, section 33-246 Dade County Code, which is the basic set of regulations applicable to the subject property. If unrestricted, this category would permit a gas station on the subject property. Additionally, however, are the sections providing for further restrictions as to specific properties. Thus section 33-33 of the code provides that applications "may be granted subject to all reasonable restrictions and conditions deemed necessary... ." This power to subject property to further restriction if emphasized in section 33-315 of the code where the board of county commissioners is authorized to "take final action upon any and all matters and requests contained in the application... ." This section further provides that when final action has been taken by the board:
its record, together with a certified copy of its minutes and resolution pertaining to such action shall be transmitted to the Department for filing, and the same shall be open to the public... .
The application that was under consideration by the board when it enacted Resolution NO. Z-93-75 was solely for the explicit use of the property as a bank or savings and loan. The county acted on that specific matter before it and approved, by resolution, the property's use as a bank or savings and loan. Pursuant to section 33-315 of the code, this resolution became *561 part of the public record. Such a restriction on the property's use which was made in the public interest became binding upon the property.
Code section 33-3 provides for zoning maps to be kept in the Building and Zoning Department and for all modifications to be shown on these maps. Section 33-305 provides the board shall by resolution adopt, approve, and ratify the maps as originally adopted and as modified, amended, and changed by subsequent resolutions and also provides that the director shall maintain these maps.
Thus the public is on notice that the county applies the basic code provisions by resolution; that these resolutions which are passed subsequent to public hearing can modify districts and restrict property use; and that the rights of property owners can thus be limited. Anyone attempting to learn what, if any, use limitations apply to his property need only turn to the applicable resolution. The zoning map in the instant case contained a clear reference directing the reader's attention to Resolution Z-93-75.
Finally, since the property owners were bound by law to be on notice of the provisions of Section 33, they cannot claim detrimental reliance on the permit inadvertently issued by the county. Resolution Z-93-75 demonstrates on its face that construction of a gas station would be illegal and that the property is limited to use as a bank or savings and loan. Therefore, while building permits were subsequently issued by government officials, estoppel will not lie for prohibited acts. As pointed out in [Dade County v.] Gayer, [388 So.2d 1292 (Fla. 3rd DCA 1980)], while application of the rule may appear harsh,
it would be inconceivable that public officials could issue a permit, either inadvertently, through error, or intentionally, by design, which would sanction a violation of an ordinance adopted by the legislative hand of the government. Only the duly constituted members of the Metropolitan Dade County Commission enjoy that prerogative and then only in accordance with established procedure.
Fontainebleau Gas & Wash, Inc., 570 So.2d 1006, 1007-08 (citations omitted).
I am unable to find language in Fontainebleau Gas & Wash, Inc., to support this court's en banc conclusion that the original panel opinion misapplied "the rule of law relating to the enforceability of restrictive covenants announced in Metropolitan Dade County v. Fontainebleau Gas & Wash, Inc., 570 So.2d 1006 (Fla. 3d DCA 1990)." Slip op. at 2.
Unlike the issue litigated in Fontainebleau Gas & Wash, Inc., the issue before us is the enforceability of a restrictive covenant, not an attempt to circumvent a zoning restriction. Sunlink has conceded that it is bound by the applicable property zoning provisions. Sunlink also concedes that any change in zoning must be pursued through the County Commission. This concession, however, should not serve to curtail Sunlink's right to seek redress, at law, from an illegally restrictive covenant. It should be unnecessary to point out that the County Commission lacks the authority to provide the relief Sunlink seeks here.
Moreover, Sunlink is not attempting to circumvent the restrictive covenant. Sunlink is merely attempting to litigate its position that the restrictive covenant constitutes an unreasonable restraint against alienation. Sunlink has neither put the property to an illegal use nor has it sought a zoning variance. Sunlink merely challenges the validity of a restrictive covenant.
Furthermore, the surrounding property owners would not be harmed by a resolution of this issue in Sunlink's favor. Sunlink's purpose is to have the court declare illegal a covenant that restricts alienation of the property to an ATT affiliate. It does not intend to put the property to any new use. Thus, the surrounding property owners will still enjoy the benefit of the property's light industrial use zoning until it is rezoned pursuant to County Commission procedures.

*562 III. CONCLUSION
Judge Cope appears to agree with our original majority conclusion that the trial court correctly found the restraint on alienation to be unlawful; nevertheless, I am unable to accept the remainder of his views as feasible alternatives. I would adhere to the majority opinion of January 28, 1992, and would hold that the trial court correctly concluded that the restrictive covenant constitutes an unreasonable restraint on alienation.
HUBBART and GODERICH, JJ., concur.
COPE, Judge (dissenting).
After considering the motion for rehearing and response thereto, I withdraw my separate opinion previously filed in this matter, and substitute the following dissenting opinion:
I respectfully dissent. The majority's disposition of this case runs directly contrary to the Florida Supreme Court's decisions in Davis v. Geyer, 151 Fla. 362, 9 So.2d 727 (1942), and Iglehart v. Phillips, 383 So.2d 610 (Fla. 1980).

I
Sunlink Corporation has entered into a contract to sell forty acres of vacant land in northern Dade County. The real estate is encumbered by a restrictive covenant which purports to prevent the land from being sold to anyone other than an entity owned, controlled by, or affiliated with American Telephone & Telegraph Company ("AT & T"). The proposed buyer is not affiliated with AT & T. Metropolitan Dade County takes the position that Sunlink cannot sell this property to the proposed buyer unless Sunlink obtains the permission of several thousand neighboring owners to release the restrictive covenant.
Sunlink brought suit in circuit court, seeking relief from the covenant. In count I, Sunlink sought to terminate the restrictive covenant due to changed circumstances. Sunlink alleged that AT & T had been restructured by federal court order. As a result of the AT & T restructuring, Sunlink (a former AT & T affiliate) had no use for the property. Sunlink sought relief from the restrictive covenant so that it could sell the property under the pending contract for purchase and sale.
In count II, Sunlink alleged that the restrictive covenant is on its face an unlawful restraint on alienation, because it prohibits the sale of the property to anyone other than an AT & T affiliate. Sunlink contended that the County's proposed alternative  that Sunlink should obtain the consent of several thousand neighboring landowners to release the covenant  did not render the covenant any less an unlawful restraint on alienation.
Sunlink moved for summary judgment on count II, the claim that the restriction is an unlawful restraint on alienation. The trial court granted summary judgment, finding that the restriction on conveyance "constitutes an unreasonable and illegal restraint upon the Plaintiff's right to alienate, transfer[,] use and convey its property and is therefore void ab initio and of no further force and effect." This ruling leaves Sunlink free to sell the property subject to the existing light industrial zoning.
The County appealed. The initial panel decision sustained the trial court's ruling. On rehearing en banc, the majority disposition is to reverse with directions to dismiss the declaratory judgment action entirely. The majority instructs Sunlink that its sole recourse is to attempt to obtain the permission of the neighbors to lift the restraint on alienation, so that Sunlink can sell its land.
Leaving aside the fact that Sunlink is in any event entitled to a declaratory judgment, and is also entitled to an opportunity to be heard on count I of its complaint, the trial court was entirely correct in concluding that the restraint on alienation in this case is unlawful.

II
By way of background, in the early 1970's AT & T and Sky Lake Development, Inc., owned about 420 acres of land in north Dade County. As part of the development approval for this area, AT & T and Sky Lake entered into a Declaration of Restrictive Covenants in December, 1974. The property at *563 issue here was rezoned light industrial. The Declaration provided, in part:
2. Industrial Zoning. As to all property which may be zoned thereunder to classification IU-C or other industrial classification, Owners [Sky Lake and AT & T] agree that there will be no sales, leases or other transfers of ownership or right to possession or use, except to entities owned, controlled by, or affiliated with the Owner American Telephone and Telegraph Company ... which for the purpose hereof includes, but is not limited to, Southern Bell Telephone & Telegraph Co. and Western Electric Company.
(Emphasis added).
The Declaration goes on to say:
12. Term of Restrictions. These covenants are to run with the land, and shall be binding on all parties and all persons claiming under it for a period of thirty (30) years from the date these covenants are recorded, after which time they shall be extended automatically for successive periods of ten (10) years, unless an instrument signed by a majority of the then owner(s) of the real property and a majority of those within 500 feet of the boundary of the property has been recorded, agreeing to change the covenants in whole or in part, providing the covenants have first been released by the [Dade County] Commission.
(Emphasis added).[1]
In 1984 the subject property was transferred to Sunlink. This transfer was permissible because Sunlink is a Southern Bell affiliate and is thus within the group of permissible transferees set forth in the Declaration.
In 1989 Sunlink contracted to sell the property. The buyer is not an AT & T affiliate. The contract is contingent on the property being rezoned to a zero lot line residential classification. However, as it presently stands, the parties interpret the Declaration to prohibit Sunlink from consummating the contract for purchase and sale because the buyer is not an AT & T affiliate.[2]

III
It should be obvious that the Declaration is a restraint on alienation. Sunlink owns vacant land and has entered into a contract to sell it. The buyer wishes to buy the land, but the buyer cannot make the purchase because the Declaration will not allow it. The Declaration only allows the land to be sold to an AT & T affiliate, and to no other person.
Florida law draws a clear distinction between a restraint on alienation (which is generally disfavored) and a restriction on use (which will be upheld if reasonable). An overview is as follows:
The general rule is that one of the incidents of the ownership of property is the right to convey it, and the law will not permit the rights of ownership to be fettered by the imposition of restraints by a grantor or testator who seeks to convey or dispose of his property and at the same time to maintain control over its alienation or use. The law seeks to encourage the ready alienation of property of all kinds and to discourage restraints on alienation that would have the effect of withdrawing such property from the ordinary rules and channels of trade and commerce. Consequently conditions that operate as restraints on alienation are held to be void as against public policy... .
An example of an invalid restraint on alienation is a provision in a deed that prohibits the grantee from alienating his fee without the consent of the grantor.
... .
A restriction on the use of property is not necessarily a restraint on its alienation. Such restrictions commonly relate to the *564 location, character, or cost of improvements, to types of business or activity deemed offensive, undesirable, or detrimental to the property or the neighborhood... . As a general rule if the court can be persuaded that the restriction does not constitute a substantial impairment of alienability, is reasonable, is not contrary to public policy or in restraint of trade, and violates no constitutional guaranty of personal rights, it will be upheld.
22 Fla.Jur.2d Estates, Powers, and Restraints §§ 70, 72 (footnotes omitted) (1980); see also 5B Richard R. Powell & Patrick J. Rohan, Powell on Real Property para. 842, at 77-21 n. 14 (1993).
It is important that a restraint on alienation be clearly distinguished from a restriction on use. The general policy is that reasonable restrictions on the use of land will be upheld, but the owner remains free to sell the land to any willing purchaser, subject to the zoning or other lawful restraints on land use. In this way reasonable restrictions on land use are sustained, while upholding the longstanding public policy in favor of the ability of the owner to sell his or her land.
The Florida Supreme Court has clearly stated that the type of restraint on alienation involved here is void. In Davis v. Geyer, the court said that the right of alienation is "`an inseparable incident to an estate in fee... .'" 151 Fla. at 369, 9 So.2d at 729 (citation omitted). The court went on to say "`A condition to alien only to a particular person or persons is void... .'" Id. at 370, 9 So.2d at 730 (emphasis added; citation omitted). The condition involved here is to alien only to particular persons, i.e., AT & T affiliates. Since the Florida Supreme Court has said that the type of restriction involved here is an unlawful restraint on alienation, we are obliged to rule accordingly, and to uphold the ruling of the trial court in this respect.
The majority characterizes this portion of the Declaration as a restriction on use, not alienation. Relying principally on cases which construe the reasonableness of restrictions on use,[3] the majority concludes that this restraint on alienation should be upheld. That analysis is incorrect.
The difficulty is that although the Declaration has other provisions which restrict the use of the property, the particular paragraph which is now before us  paragraph 2  clearly prohibits the sale of this property to anyone but a small list of potential transferees. Such a restrain is plainly a restraint on alienation prohibited by Davis v. Geyer. It is certainly not a restriction on use; if it were, then the owner could sell the land subject to the use restriction.
The majority relies on Seagate Condominium Association, Inc. v. Duffy, 330 So.2d 484 (Fla. 4th DCA 1976), but that reliance is misplaced. In Seagate, the Declaration of Condominium prohibited "the leasing of units to others as a regular practice for business, speculative, investment or other similar purposes... ." Id. at 485. This restriction was challenged as an unlawful restraint on alienation, since the leasing of the property constituted temporary alienation of some of the *565 unit owner's rights in the property for the duration of the lease. The Fourth District upheld the restriction, noting that it applied only to leasing activities, and that the unit owner was not otherwise restrained from selling his or her unit. The court acknowledged that it is unlawful to have "unlimited or absolute restraints on alienation." Id. at 485 (citing Davis v. Geyer, 151 Fla. 362, 9 So.2d 727 (1942)).[4] Because the condominium declaration prohibited "only a special form of alienation, i.e. leasing; under general but not unlimited circumstances ... for a not unlimited period of time," id. at 486 (footnote omitted), the restriction was upheld. The Seagate court reasoned that the condominium restriction could be upheld because it was not an unlimited or absolute restraint on alienation within the meaning of Davis v. Geyer.[5]
In the present case, the clause at issue states "that there will be no sales, leases or other transfers of ownership or right to possession or use, except to entities owned, controlled by, or affiliated with the Owner American Telephone and Telegraph Company... ." This is precisely the sort of absolute restraint on alienation condemned by Davis v. Geyer: "`A condition to alien only to a particular person or persons is void... .'" 151 Fla. at 370, 9 So.2d at 730.

IV
The County's rejoinder is that Sunlink has a ready means of relief because it can request that the neighboring landowners release the restrictive covenants.
Paragraph 12 of the Declaration allows the covenants to be changed in whole or in part by means of "an instrument signed by a majority of the then owner(s) of the real property and a majority of those within 500 feet of the boundary of the property... . providing the covenants have first been released by the [Dade County] Commission."[6] Thus, according to the County, the restraint on alienation is not unreasonable, because Sunlink can request that the landowners consent to waiving this restriction by obtaining an instrument signed by several thousand of the neighboring property owners.
This argument likewise is without merit. In substance the County is telling Sunlink that it must obtain the neighbors' consent to sell this property. The neighbors may, at their whim, grant or withhold such consent.
This, too, is a classic unlawful restraint on alienation. As stated in Davis v. Geyer:
"The right of alienation has been an inseparable incident to an estate in fee ever since the statute quo emptores. After an absolute conveyance in fee simple, a clause providing that the grantee shall not mortgage or dispose of the property is repugnant and void or that he shall not offer to mortgage or suffer a fine or recovery. So is a clause prohibiting the grantee from conveying without the consent of the grantor."
151 Fla. at 369-70, 9 So.2d at 729-30 (emphasis added; citation omitted).
Similarly, in Iglehart v. Phillips, the Florida Supreme Court stated:
Consistent with this general rule of law, we held in Davis v. Geyer, 151 Fla. 362, 9 So.2d 727 (1942), that a deed containing a provision which prohibited the grantee from selling property without first obtaining the approval of the grantor was violative of the rule against unreasonable restraints because the provision allowed the grantor to arbitrarily deny a sale.

383 So.2d at 615 (emphasis added).
That is the situation here. The majority has instructed Sunlink to submit this contract for purchase and sale to the approval of *566 the neighboring landowners. That is so because the majority has directed Sunlink to solicit the signatures of a majority of the neighboring landowners to an amendment to the Declaration which will waive the restraint on alienation so that Sunlink can convey to someone other than an AT & T affiliated company. This ruling places Sunlink in a position where Sunlink's ability to sell this property is subject to the approval of the neighboring landowners, who can arbitrarily deny approval to the sale.
In ruling as it has, the majority in the present case has (without discussing the point) proceeded directly contrary to this court's decision in Aquarian Foundation, Inc. v. Sholom House, Inc., 448 So.2d 1166 (Fla. 3d DCA 1984), as well as the Fourth District's more recent decision in Camino Gardens Association, Inc. v. McKim, 612 So.2d 636 (Fla. 4th DCA), review denied, 620 So.2d 760 (Fla. 1993). In Aquarian Foundation, a declaration of condominium required that a unit owner had to obtain written consent of the condominium association's board of directors to any sale, lease, or transfer of a unit. A unit owner sold her unit without obtaining consent of the board of directors. The board of directors withheld its consent and invalidated the sale. This court said:
The declaration of condominium in the present case permits the association to reject perpetually any unit owner's prospective purchaser for any or no reason. Such a provision, so obviously an absolute restraint on alienation, can be saved from invalidity only if the association has a corresponding obligation to purchase or procure a purchaser for the property from the unit owner at its fair market value. Otherwise stated, if, as here, the association is empowered to act arbitrarily, capriciously, and unreasonably in rejecting a unit owner's prospective purchaser, it must in turn be accountable to the unit owner by offering payment or a substitute market for the property.
448 So.2d at 1169 (emphasis added); accord Camino Gardens Ass'n, Inc. v. McKim, 612 So.2d at 641-42.
The identical problem exists here. The neighboring landowners are free to withhold their consent to sale at their whim. They have no corollary obligation to purchase the property or provide a reasonable alternative in the event that they disapprove the sale. The majority's disposition of this case  which effectively makes this entire transaction subject to the approval of the neighboring landowners  is contrary to settled law and erroneous.

V
Given that the Declaration contains an unlawful restraint on alienation, what is the remedy? It is here that the judgment contains a significant error.
Under the older cases, an unlawful restraint on alienation was treated as being void. See Davis v. Geyer, 151 Fla. at 368-70, 9 So.2d at 729-30. The remedy was to invalidate the clause which unlawfully restrained alienation. Id. Once the unlawful restraint was invalidated, the property owner could then convey the land free of the restriction. That is the remedy that the trial court ordered in the present case.
In 1980 the Florida Supreme Court adopted a more flexible rule. Iglehart v. Phillips, 383 So.2d at 616-18. The Iglehart court recognized that in many cases, like the one now before us, the unreasonable restraint on alienation was part and parcel of the original bargain. In Iglehart the court stated:
The covenant in this instance is clearly an unreasonable restraint which inhibits the free alienation of this property. Both the grantor and the grantee believed, however, that the covenant was valid at the time of the conveyance. The grantee accepted the property with the understanding that the covenant was part of the consideration... . Further, it is unrefuted that the covenant was the primary part of the consideration for the conveyance of this property.
Id. at 617. In such a situation it was intolerable to enforce the unreasonable restraint on alienation. On the other hand, simply voiding the restraint on alienation "frustrates the clear intent of the original grantor and destroys what he considered the primary consideration for this land." Id.
*567 The Iglehart court's solution to the problem was to grant the trial court the equitable discretion to fashion an appropriate remedy.
Although under the circumstances we find equity does not require rescission or cancellation, we do believe that the grantor's successors are entitled to equitable relief. When the equity powers of the court have been brought into an action, its active jurisdiction will be continued until full justice has been done between the parties. The appropriate relief should be left to the trial court, which should be allowed to consider evidence and take testimony....
Id. (citations omitted).
The Iglehart decision is squarely applicable to the present case. The County has argued strenuously the equitable considerations in favor of the County and the neighboring landowners. The County says that the approval of the light industrial zoning for this tract was part and parcel of a larger land use approval. The County urges that the approval for a light industrial use was intended to encompass only the general kinds of office and warehouse uses that are enumerated in the Declaration. The County urges that to allow Sunlink to convey the property subject to an unrestricted light industrial classification may result in development of the land which is inconsistent with the original proposals and approval. The County reasons that the simple voiding of the restraint on alienation will confer an unwarranted windfall on Sunlink and its grantee.
These are entirely legitimate concerns. At the time the 1974 Declaration was entered into, it was contemplated that AT & T affiliates would develop and occupy a unified office and warehouse complex on this site. The proposal contemplated a reasonably high quality of development in an office park setting under unified control. The approval did not, for example, contemplate subdivision of the property and resale to third persons, or piecemeal commercial development. Plainly, a lifting of the restraint on alienation, without affording other equitable relief, could adversely affect land use planning in that area, and the reasonable expectations of the neighboring property owners.
It is precisely for that reason that Iglehart mandates an evidentiary hearing directed to the question of an appropriate remedy. Since the land is vacant, this allows the trial court considerable flexibility. One possibility may be to have the zoning revert to the classification it had prior to 1974. Another possibility may be to make the lifting of the restraint on alienation contingent on the county commission's rezoning the property to a nonindustrial zoning. Undoubtedly, other possibilities exist. The trial court must fashion a reasonable remedy which will impose appropriate land use restrictions so as to protect the overall interests of the community and further the goals of rational land use planning, while at the same time lifting the unreasonable restraint on alienation and allowing the owner to sell the property.
It should also be noted that the Iglehart decision disposes of one other argument strongly pressed by the County. The County urges that since AT & T explicitly agreed to the restraint on alienation in 1974, and Sunlink took title to the property knowing of that restriction, Sunlink is estopped from challenging the unlawful restraint on alienation. That argument is without merit. The entire body of law dealing with unlawful restraints on alienation involves cases in which the landowner took title knowing of the restraint on alienation. The fact that the predecessor in title explicitly agreed to the restraint on alienation is not (without more) a basis for dismissing a challenge to an unlawful restraint. Iglehart makes clear that relief will not be withheld on that ground. Instead, all of the circumstances involving the unreasonable restraint on alienation are to be explored in an Iglehart hearing, following which the trial court is given broad discretion to fashion an equitable decree.
In sum, the trial court was entirely correct in concluding that paragraph 2 of the Declaration constituted an unreasonable restraint on alienation. The trial court erred, however, by simply declaring paragraph 2 to be "void ab initio and of no further force and effect." Instead, under Iglehart, the trial court must conduct an evidentiary hearing regarding the appropriate remedy to be applied. That is the appropriate forum for the *568 County's equitable arguments and is the appropriate forum for arriving at a fair and reasonable remedy. The judgment should be affirmed insofar as it finds that paragraph 2 of the Declaration is an unlawful restraint on alienation, but the judgment should be reversed and the cause remanded for further proceedings to fashion a remedy consistent with Iglehart.[7]

VI
Although not raised by the parties, there is another reason for a remand for further proceedings. The parties to this case have proceeded on the assumption that the Declaration applies to the pending contract for purchase and sale of real estate. In my view there is considerable doubt whether the Declaration actually applies to this transaction.
The Declaration refers to "a zoning application to be heard by the [Dade County] Commission on November 11, 1974, under Application No. 74-497... ." Paragraph 2 of the Declaration goes on to say, "As to all property which may be zoned thereunder to classification IU-C or other industrial classification, Owners agree that there will be no sales, leases or other transfers of ownership... . except to entities owned, controlled by, or affiliated with the Owner American Telephone and Telegraph Company... ." (Emphasis added).
At the present time the real estate is zoned light industrial. However, the contract for purchase and sale is contingent on, among other things, a rezoning of the property to a residential classification. If the County Commission grants a rezoning to a residential classification, it will no longer be zoned light industrial. Upon rezoning to residential, paragraph 2 of the Declaration would appear to be no longer applicable to this transaction. If that is the correct interpretation of the Declaration, then the parties can govern themselves accordingly.
As already stated, this matter should be remanded for a hearing under Iglehart. The matter also should be remanded for a declaratory judgment as to whether the Declaration of Restrictive Covenants has any application to the pending contract for purchase and sale if rezoning to a residential classification is granted.

VII
Alternatively, assuming arguendo that the majority's analysis is correct as to count II, the reversal ordered by the majority is still erroneous. In this case Sunlink sought a declaratory judgment on two different theories. On count II, Sunlink contended that paragraph 2 of the Declaration is facially an unreasonable restraint on alienation. It was on that count, and that count alone, that the trial court entered summary judgment. The summary judgment on count II is the subject of the present appeal.
Sunlink's complaint also requested relief under count I. The theory of count I was that there had been changed circumstances since the signature of the Declaration in 1974. The changed circumstances were the federal court proceedings which restructured AT & T and its affiliates.[8] The complaint states, in part:
19. At the time the aforesaid Declaration was executed ... it was the intent of the parties and in particular AT & T that the Subject Property would ultimately be utilized only by AT & T and/or its affiliates *569 for an industrial use in support of its business of providing telecommunication services to the South Florida area, which, as a light and clean industrial use, was determined to be compatible with the surrounding residential uses.
20. Since 1974, there has been a substantial change of conditions which makes the restrictions contained in paragraph 2 of the Declaration no longer appropriate or necessary. These changes include but are not necessarily limited to the following:
a) As a result of technological changes and advancements and the Court ordered restructuring of AT & T and its affiliate companies, only a small portion of the Subject Property is required for present and future industrial use.
b) No permitted transferee, as defined in paragraph 2 of the Declaration has a use for the portion of the Subject Property not required for present or future industrial uses ("the Remaining Property").
c) Utilization of the Remaining Property for industrial purposes other than that originally contemplated by the parties would be incompatible with the surrounding residential uses.
d) Utilization by the Plaintiff of the Remaining Property for any purpose other than industrial would be inconsistent with the Plaintiff's business.
e) As a result of the foregoing the Plaintiff cannot utilize the Remaining Property nor can it transfer or sell the Remaining Property to any third party who can use the property without violating the restrictions imposed by the Declaration.
21. The original intent of the parties to the Declaration was to limit those persons and entities which could use the Subject Property for industrial purposes rather than to prevent the transfer of such property to others to use for residential purposes. This intention has been frustrated by the facts and circumstances set forth herein.
22. The Plaintiff is informed and believes that the most appropriate use for the Remaining Property would be residential, which is compatible with the surrounding use.
23. Plaintiff, the owner of the Remaining Property, is not in the business of residential development and wishes to sell this property to third parties to be developed for some appropriate residential use. Plaintiff has presently entered into a contract for the sale of the Remaining Property and the prospective purchaser of the Remaining Property is seeking to have it rezoned as residential. As a result of the rezoning and development of this property as residential, the part of the Declaration restricting the industrial use of the Remaining Property to a nationally recognized utility company will no longer be necessary.
Sunlink points out that count I of the complaint states a distinct cause of action from count II. In count II, Sunlink's theory is that the Declaration contains a facially unlawful restraint on alienation. In count I, by contrast, Sunlink contends that whether or not the restraint is facially unlawful, the parties in 1974 did not and could not anticipate the dramatic changes in AT & T's business which would be wrought by the federal divestiture orders entered a decade later. As a result of that wholly unanticipated development, it has become impractical, unreasonable, and oppressive to enforce paragraph 2 in accordance with its original terms.
Sunlink correctly contends that, even if it is not entitled to relief under count II of its complaint for declaratory judgment, it is nonetheless entitled to proceed in the trial court under count I. See Lambert v. Justus, 335 So.2d 818, 819-21 (Fla. 1976) (changed conditions in context of use restriction). Thus, even if the majority is correct as to count II, the only permissible disposition is to remand for further proceedings on count I.

VIII
The trial court was completely correct in saying that paragraph 2 of the Declaration is an unlawful restraint on alienation. That part of the final judgment should be affirmed.
The final judgment should be reversed insofar as it simply declares paragraph 2 "void *570 ab initio and of no further force and effect." The cause should be remanded for an evidentiary hearing to prescribe a remedy under Iglehart v. Phillips, 383 So.2d at 617-18.
On remand the trial court should also determine whether the pending contract for purchase and sale is, in fact, proscribed by paragraph 2 of the Declaration or whether upon approval of residential zoning by the Dade County Commission, the contract for purchase and sale will be automatically removed from the scope of paragraph 2 because the property will no longer be zoned light industrial.
Finally, a remand should be allowed in any event for further proceedings on count I of Sunlink's complaint.[9]
NOTES
[1] Sunlink also sued AT & T, Skylake Development, Inc., and the class of property owners whose properties are within 500 feet of Sunlink's property. They are not parties to this appeal.
[2] We reject the County's arguments that Sunlink's action is barred by a statute of limitations or the doctrine of exhaustion of administrative remedies. Sunlink's declaratory judgment action was timely, and the declaratory judgment procedure is the appropriate remedy for obtaining a determination of rights or status under a restrictive covenant. Lambert v. Justus, 335 So.2d 818 (Fla. 1976); § 86.021, Fla. Stat. (1989); see § 86.111, Fla. Stat. (1989) ("The existence of another adequate remedy does not preclude a judgment for declaratory relief."). In addition, as this is an action for declaratory relief, not for rezoning of property, there are no adequate administrative remedies, and there need not be an exhaustion of administrative remedies prior to instituting the action. Junco v. State Bd. of Accountancy, 390 So.2d 329, 331 (Fla. 1980).
[3] There were no buyers from among the permitted transferees, and no permitted transferee would have any use for the property. Sunlink stated in its complaint that

"[s]ince 1974, there has been a substantial change of conditions which makes the restrictions contained in paragraph 2 of the Declaration no longer appropriate or necessary... . No permitted transferee, as defined in paragraph 2 of the Declaration has a use for the portion of the Subject Property not required for present or future industrial uses... ."
Sunlink alleges that the property, under the restriction, is useless, "nor can it transfer or sell the remaining property to any third party who can use the property without violating the restrictions imposed by the Declaration." In effect, the restraint is absolute.
[1] The sale is contingent upon rezoning the subject property from IU-C (a clean light industrial use) to a zero-lot line residential development. The average density of the area under the assurances given to the County was 5.42 units per acre. The proposed zoning change would substantially increase the density of the surrounding area.
[2] In Henthorn, supra, the court held that an automatic renewal provision of a restrictive covenant was invalid for the "same policy reasons which invalidate the remote vesting of property interests ..." 221 So.2d at 466. The court in Balzer receded from that position holding a restrictive covenant with an automatic renewal provision valid.
[3] The preamble to the Declaration of Restrictive Covenants states:

KNOW ALL MEN BY THESE PRESENTS:
THAT the undersigned SKY LAKE DEVELOPMENT INC., a Florida corporation, and AMERICAN TELEPHONE AND TELEGRAPH COMPANY, a New York corporation, hereinafter collectively referred to as "OWNERS," being the owners of the fee simple title to the property described on Exhibit "A" attached hereto and made a part hereof, in order to assure the Board of County Commissioners of Metropolitan Dade County, Florida ..., that the representations made to it by said corporations or their representatives will be abided by, ... specifying that this Declaration shall be a covenant running with the land, ... These restrictions, during their lifetime, shall be for the benefit of all present and future owners of subject property and for the public welfare. (Emphasis added.)
[1] The Declaration also provides:

13. Enforcement. Enforcement shall be by action at law or in equity against any parties or persons violating or attempting to violate any covenants, either to restrain violation or to recover damages. The party bringing the action or suit shall be entitled to recover, in addition to costs and disbursements allowed by law, such sum as the Court may adjudge to be reasonable for the services of his attorney.
[2] For purposes of parts I-V of this opinion, the parties' interpretation of the Declaration is assumed to be correct. An alternative interpretation is suggested in part VI.
[3] See Sinclair Refining Co. v. Watson, 65 So.2d 732 (Fla. 1953) (property to be used for street, roadway, highway, or sidewalk purposes; restraint on use but not alienation; covenants restraining the free use of property are enforced as long as they are reasonable and not illegal or contrary to public policy), cert. denied, 346 U.S. 872, 74 S.Ct. 121, 98 L.Ed. 381 (1953); Metropolitan Dade County v. Fontainebleau Gas & Wash, Inc., 570 So.2d 1006, 1007-08 (Fla. 3d DCA 1990) (covenant restricting use of property to a bank or savings and loan association; no restraint on alienation; "[R]esolutions which are passed subsequent to public hearing can ... restrict property use; and... the rights of property owners can thus be limited."); AC Assocs. v. First Nat'l Bank of Florida, 453 So.2d 1121, 1125 (Fla. 2d DCA 1984) (reciprocal parking agreement for adjoining commercial premises; no restraint on alienation; insufficient showing to justify judicial modification of reciprocal parking agreement); Henthorn v. Tri Par Land Dev. Corp., 221 So.2d 465 (Fla. 2d DCA 1969) (annual property charge for maintenance and other public purposes was valid and duration of the agreement was not indefinite; no restraint on alienation), receded from on other grounds, Balzer v. Indian Lake Maintenance, Inc., 346 So.2d 146 (Fla. 2d DCA 1977) (covenant to pay twenty dollars per year for general maintenance on property was upheld; no restraint on alienation); cf. Johnson v. Girtman, 542 So.2d 1033 (Fla. 3d DCA 1989) (agreement to keep a will in force was a valid contract to make a will and not a restraint on alienation where the contract was the functional equivalent of a life estate followed by a remainder).
[4] The court also acknowledged that "[t]here is a distinction between restraints on alienation and restraints on use." 330 So.2d at 486 n. 2 (citations omitted).
[5] It may well be that the restriction on leasing involved in Seagate is more properly viewed as a restriction on use, rather than a restriction on alienation.
[6] Sunlink reads paragraph 12 to prohibit any amendment until 30 years have expired. The County argues that the waiver provision can be invoked at any time. The County reasons that paragraph 12 allows any covenant to be modified or eliminated, in whole or in part; this necessarily allows an amendment to be accomplished at any time, because the landowners can agree to modify the 30-year time period. The County's position on this point is correct.
[7] Remedy is the issue on which I part company with Judge Baskin's dissenting opinion. The dissenting opinion is entirely correct in saying that paragraph 2 of the Declaration constitutes an unlawful restraint on alienation. However, the trial court's judgment cannot be affirmed in toto because that judgment simply struck out paragraph 2 of the Declaration, leaving Sunlink free to convey the property subject to the light industrial classification. This confers an unwarranted windfall on Sunlink and its grantee. The case must be remanded for hearings to fashion a remedy under Iglehart v. Phillips, 383 So.2d at 617-18.
[8] See United States v. American Telephone & Telegraph Co., 552 F. Supp. 131 (D.D.C. 1982), aff'd sub nom. Maryland v. United States, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983), modified sub nom. United States v. Western Electric Co., 569 F. Supp. 990 (D.D.C.), further modified, United States v. Western Electric Co., 569 F. Supp. 1057 (D.D.C.), aff'd sub nom. California v. United States, 464 U.S. 1013, 104 S.Ct. 542, 78 L.Ed.2d 719 (1983).
[9] I also dissent from denial of the motion for certification.